**FOR PUBLICATION**



**FILED**
Oct 17 2013, 5:29 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARIELENA DUERRING**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY L. HYSER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1301-CR-37 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable George W. Biddlecome, Judge
Cause No. 20D03-1206-FA-32

**October 17, 2013**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Timothy L. Hyser appeals his convictions for child molesting as a class A felony and child molesting as a class C felony. Hyser raises three issues, one of which we find dispositive and restate as whether he was improperly denied a meaningful opportunity to present a complete defense. We reverse.

FACTS AND PROCEDURAL HISTORY

In 2007, Joni Miller and her son, J.M., who was born in January 2005, moved into a house in Elkhart County, Indiana, next to Hyser's house. In April or May of 2008, Mark Marner, Miller's boyfriend, moved in with Miller and J.M. At some point, Hyser became friends with Miller, Marner, and J.M.

On December 27, 2011, the police contacted Miller because there had been a report to the Department of Child Services ("DCS") that Marner was abusing J.M. Detective Charles Osterday with the Elkhart County Sheriff's Department investigated the report together with an investigator from DCS. During the investigation, Detective Osterday obtained information from J.M. that he had been sexually abused by Hyser.

In June 2012, the State charged Hyser with Count I, child molesting as a class A felony, and Count II, child molesting as a class C felony. The State filed a motion *in limine* requesting the court to restrict Hyser and his counsel from offering evidence of, among other things, any mention of Marner's status as a registered sex offender and any mention of parental discipline of J.M. by Marner, and the court granted the motion.

A jury trial was conducted during which the jury heard testimony from, among others, Miller, J.M., Detective Osterday, Marner, and Hyser. Hyser's counsel informed the court that Hyser's position was that the case against him was based upon false

2

accusations which were made in retaliation against Hyser for reporting his observations of Marner abusing J.M. Hyser's counsel said that Marner threatened Hyser by stating there would be "hell to pay" if Hyser spoke out about what he observed. Transcript at 4. During cross-examination of Detective Osterday, Hyser's counsel asked the identity of the person who had made the report to DCS that Marner was abusing J.M., and the State objected. The court stated that Hyser's statements to DCS were hearsay, that Detective Osterday could testify that his investigation started when he received a call from DCS, and that the fact that the report was made by Hyser was inadmissible hearsay. Hyser testified that the allegations against him were false, that he would never molest a child, that he had eleven grandchildren, that J.M. "was never at [his] house by himself unless [he] was babysitting for him which they asked me to do or they were there," and that J.M. "was never sent over to play with the animals, given a time to stay. That never happened." Id. at 287.

Later, Hyser presented an offer to prove, and presented the testimony of Deborah Collins, Melvin Key, Marner, and Miller. Collins testified that, while visiting with Hyser, she witnessed Marner physically strike J.M. Specifically, Collins testified that Marner "doubled up his fist and hit [J.M.] in the side, buckled the little boy to the ground." Id. at 335. Collins testified that she told Marner "not to ever, ever let [her] see him do that again, that it was child abuse, and it wouldn't be beyond [her] to turn him in." Id. Key testified that, in 2011 while visiting Hyser and his neighbor Marner, he observed Marner strike J.M. Key testified that "[i]t was not discipline," that J.M. was "kind of doing a drop-kick," that Marner "hit him in the right hip, which stopped [J.M.'s] forward

progress, back him up, and dropped him on the floor," and that Marner "doubled his fist and hit [J.M.] in the right hip and stopped him in mid-air." Id. at 338.

Marner testified that he had registered as a sex offender with the Elkhart County Sheriff. He stated that he recalled a time in August 2011 when he was at Hyser's house with Collins when she told him never to hit J.M. like that again or that she would notify DCS. When asked "[d]id there come a time a few days after this incident with [] Collins that you went back and told [] Hyser that J.M. had made some allegations about him," Marner stated: "I think that was the first time, yes, about him putting his penis in his mouth." Id. at 345. Marner testified that, after that time, J.M. went to Hyser's house only under supervision. Marner stated that he did not call DCS or the police about the incident J.M. reported to him in August 2011. When asked "despite this statement from [J.M.], you still allowed [] Hyser to watch him when he got off the bus from time to time," Marner responded affirmatively. Id. at 347. Hyser also offered an exhibit indicating that Marner was a registered sex offender.

Hyser's counsel argued that the testimony and evidence Hyser wished to present showed the retaliatory motive of Marner and that the allegations against Hyser were fabricated. Hyser's counsel argued that the facts to which Collins and Key testified were "objectively observed," that Hyser's "contention and defense is that [] Marner had [J.M.] make up these stories, fabricate these stories, about sex abuse involving [] Hyser in order to blunt or put the end to the investigation into [] Marner and his abuse with [J.M.]," that "it's a form of retaliation; it goes to [] Marner's motive," that "his motive would be relevant [] and admissible," and that the facts "prove the defense of retaliation." Id. at

4

353-354. The State argued that the testimony of Collins and Key was not relevant because of the time between the August 2011 incident and the December 2011 disclosure. The court found that Collins would not be allowed to testify as reflected in the offer to prove and that Key's testimony was not relevant.

Hyser's counsel further argued that the fact that Marner was a registered sex offender was relevant because it showed that Marner knew how the system worked, that he understood that, if there were a new charge against him, then J.M. could be taken away from him and he could be charged with a crime, and that he had a strong motivation to put an end to the investigation. The court did not admit Hyser's proffered evidence that Marner was a registered sex offender on the basis that it was not relevant. With respect to Hyser's request to elicit testimony that Marner threatened Hyser, the State argued that the statement would be hearsay and irrelevant given that the disclosure occurred in December 2011. The court stated: "I'm not going to allow the evidence of a threat. I am going to allow, however, the testimony of [] Marner concerning the fact that the child made a disclosure to him earlier, and that he allowed [Hyser] access to the child even after that disclosure was made." Id. at 363.

Hyser was found guilty as charged on Counts I and II. The court sentenced Hyser to thirty years for his conviction under Count I and four years for his conviction under Count II, to be served concurrent with each other.

ISSUE AND ARGUMENTS

The issue is whether Hyser was denied a meaningful opportunity to present a complete defense. Hyser contends that the trial court prevented him from presenting

5

testimony and evidence critical to his defense, namely, certain testimony he wished to elicit from Collins, Key, and Detective Osterday, and the evidence that Marner was a registered sex offender. Hyser argues that, "from the very outset [his] defense was predicated upon the theory that Marner had influenced J.M. to falsely accuse him of child molest[ation] in retaliation for Hyser taking action in reporting Marner to the authorities for physically abusing J.M.," that "[t]his defense certainly had some degree of plausibility when the evidence is viewed as a whole," and that "[t]he trial court refused to permit Collins to testify as to what she saw and what she said to Marner." Appellant's Brief at 7-8. Hyser further argues that Key also testified that he witnessed physical abuse by Marner, and that he attempted to elicit testimony from Detective Osterday which would tend to show that it "was his report of physical abuse that prompted J.M.'s report of sexual allegations." Id. at 8. Hyser maintains that testimony he wished to elicit was not inadmissible hearsay and that "clearly the intent was that this evidence about the report of physical abuse was not being offered for the truth of those facts, but merely to show that the statement was made." Id. Hyser also maintains that the court wrongly excluded evidence that Marner was a registered sex offender as it "was relevant to help prove that Marner had the prior experience to know how the system worked and therefore how to coach J.M. to tell a more convincing story." Id. at 9. Hyser asserts that the wrongful exclusion of the corroborative testimony of Collins, Key, and Detective Osterday, as well as the evidence that Marner was a registered sex offender, prevented him from having a meaningful opportunity to present a complete defense which

prejudiced his substantial rights under the Fourteenth and Sixth Amendments, and thus that he deserves a new trial.

The State maintains that the trial court did not improperly impinge on Hyser's right to present a defense. The State argues that Collins did "not identify when the incident she observed had occurred," that Key indicated the incident "he had observed occurred in 2011 but did not specify when," and thus that the court "properly found the proposed testimony by Collins and Key was not relevant, as Hyser did not show any connection between Collins and Key's allegation that Marner had struck J.M. and J.M.'s report of sexual abuse by Hyser in December 2011." Appellee's Brief at 7. The State also asserts that the testimony Hyser wished to elicit from Detective Osterday was inadmissible hearsay and that Marner's status as a sex offender was not relevant.

## DISCUSSION

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Kubsch v. State, 784 N.E.2d 905, 923-924 (Ind. 2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142 (1986)) (internal quotation marks omitted). The Indiana Supreme Court stated:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

7

Id. at 924 (citing Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, (1967)). A defendant has a right to present evidence tending to show that someone other than the accused committed the charged crime and that the exclusion of such evidence by the trial court "appears inconsistent with substantial justice and therefore cannot be deemed harmless error." Allen v. State, 813 N.E.2d 349, 361 (Ind. Ct. App. 2004) (citing Joyner v. State, 678 N.E.2d 386, 390 (Ind. 1997), reh'g denied), trans. denied. When competent, reliable evidence is excluded that is central to the defendant's case, this right is abridged. Id. (citing Crane, 476 U.S. at 690, 106 S. Ct. 2142).

The standard of review for admissibility of evidence issues is whether the trial court's decision was an abuse of discretion. Id. Generally, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. Id. In determining whether an evidentiary ruling affected a party's substantial rights, the court assesses the probable impact of the evidence on the trier of fact. Id.

Ind. Evidence Rule 401 provides that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted, and hearsay is generally not admissible into evidence. Ind. Evidence Rules 801, 802.

8

Throughout the trial, from presenting arguments in response to the State's motion *in limine* to presenting the offer to prove and calling witnesses in doing so, Hyser attempted to present a defense that the allegations and testimony against him were fabricated as a retaliatory act in response to the report he made to DCS that he believed J.M. was being abused by Marner. Hyser wished to elicit testimony from Collins, as presented in his offer to prove, which demonstrated that the allegations against Hyser were first raised a short time after Collins threatened to report Marner. Hyser also wished to elicit testimony from Key that he witnessed Marner strike J.M., and from Detective Osterday that the report to DCS on December 27, 2011, was made by Hyser and that the report prompted J.M.'s allegations that Hyser had molested him. In addition, Hyser wished to present evidence to the jury that Marner was a registered sex offender in support of his defense that the allegations against him were fabricated.

The testimony which Hyser wished to elicit from Collins, Key, and Detective Osterday and the evidence that Marner was a registered sex offender was relevant as the evidence had, at a minimum, the tendency to show that the molestation allegations against Hyser were untrue and were made, or caused to be made by J.M. through the influence of Marner, in retaliation or in response to Hyser's action of making a child abuse report regarding Marner. See Smith v. State, 982 N.E.2d 393, 402 (Ind. Ct. App. 2013) ("In order to be relevant, the evidence at issue need only have some tendency, however slight, to make the existence of a material fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused.") (citation and internal quotation marks omitted), trans. denied. In addition, we note that the testimony Hyser

9

wished to elicit regarding his report to DCS was not inadmissible hearsay because Hyser did not wish to present it to prove the truth of the matter asserted, but instead to demonstrate that he had made the report against Marner a few days prior to the time he was first accused of the molestations, and the report provided a motive for Marner to retaliate against him by fabricating the molestation allegations and influencing J.M. to testify against Hyser. See Dyson v. State, 692 N.E.2d 1374, 1376 (Ind. Ct. App. 1998) (holding that the trial court erred in excluding certain testimony as hearsay because the defendant introduced the testimony not to prove the fact of the matter asserted but to demonstrate that the victim was biased and prejudiced against him) (citing Shanholt v. State, 448 N.E.2d 308, 316 (Ind. Ct. App. 1983) ("A witness's bias, prejudice or ulterior motives are always relevant at trial in that they may discredit her or affect the weight of her testimony.")). In addition, we note that Ind. Evidence Rule 803(3) provides an exception to the hearsay rule for statements of a "declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health) . . . "); Pelley v. State, 901 N.E.2d 494, 504 (Ind. 2009) (holding that a declarant's statements showed his intent to act in a particular way to restrict the defendant's activities and were relevant to show the defendant's motive and were therefore admissible under the hearsay exception for then-existing state of mind), reh'g denied; Ross v. State, 676 N.E.2d 339, 345 (Ind. 1996) (noting that admissible statements include those offered "to show the intent of the victim to act in a particular way"). Thus Hyser may present evidence of Marner's threat to him to the extent that the threat revealed that Marner intended to make false accusations, or is relevant to Marner's

10

motive for doing so.  In light of the facts of this case, the probative value of the evidence Hyser wished to present is not substantially outweighed by the danger of unfair prejudice, and the exclusion of the evidence is inconsistent with substantial justice and is therefore not harmless.

We also observe that the defense Hyser wished to present was not implausible and that the jury may have believed that his version of the facts was true.  To the extent the State argues that Collins did not identify when the incident she observed involving Marner striking J.M. had occurred, Marner acknowledged that the incident occurred in August 2011 several days before he stated that J.M. told him that Hyser had molested him.  Marner indicated that, although J.M. had told him that Hyser had molested him in August 2011, he did not report the molestation allegations to police or DCS and continued to permit J.M. to visit Hyser, unsupervised at least one time.  Miller testified that J.M. told her and Marner that Hyser molested him the day before Christmas Day in 2011, that she asked J.M. what he wanted to do about it, and that, because they were leaving town the next morning to stay with Marner's family for two nights, she told J.M. that they would talk about it after they came home.  Miller testified that she did not talk to J.M. about what he had reported during the trip and that she was contacted by the police on December 27, 2011.  The molesting allegations were not disclosed to DCS or police until there was an investigation related to Hyser's December 27, 2011 report to DCS that he believed that Marner was abusing J.M.  The evidence Hyser wished to present supports his defense, and the jury may have believed his version of the facts.

11

The testimony and evidence Hyser wished to elicit and present was exculpatory, unique, and critical to his defense. The trial court did not permit Hyser to present his defense that the allegations and testimony against him were untrue and fabricated in retaliation or response to the fact that he had made a report to DCS that he believed Marner was physically abusive toward J.M. Hyser had the right, as a fundamental element of due process of law, to present his own witnesses to establish a defense and to present his version of the facts. Kubsch, 784 N.E.2d at 924. The Indiana Rules of Evidence did not prohibit him from presenting the evidence and testimony he wished to present and elicit. Based upon the record, the exclusion of the evidence Hyser wished to present deprived him of a meaningful opportunity to present a complete defense. Accordingly, we reverse Hyser's convictions on this basis and note that the State is not barred from retrying Hyser. See Allen, 813 N.E.2d at 361-366, 369 (finding that certain testimony the defendant wished to present was exculpatory, unique, and critical to the defendant's defense, that there was no other source to rely upon to present this part of his defense, that the evidence went to the very heart of this fundamental right, and that the trial court's exclusion of the testimony made outside the presence of the jury impinged upon the defendant's right to present a complete defense and deprived him of a meaningful opportunity to present a complete defense, reversing the defendant's convictions on that basis, and noting the State was not barred from retrying the defendant).[1]

---

[1] Because we reverse on the basis that Hyser was deprived of a meaningful opportunity to present a complete defense, we need not address the other allegations of error claimed by Hyser.

CONCLUSION

For the foregoing reasons, we reverse Hyser's convictions for child molesting as a class A felony and child molesting as a class C felony.

Reversed.

NAJAM, J., and MATHIAS, J., concur.