## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 17 2015, 7:54 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Suzy St. John<br>Marion County Public Defender<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>George P. Sherman<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Hernandez,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 17, 2015<br><br>Court of Appeals Case No.<br>49A02-1410-CR-714<br><br>Appeal from the Marion Superior Court<br>The Honorable David Hooper, Magistrate<br>Cause No. 49F08-1405-CM-023544 |

**Bailey, Judge.**

# Case Summary

John Hernandez ("Hernandez") was convicted of Carrying a Handgun Without a License, as a Class A misdemeanor.[1]  He now appeals.

We affirm.

# Issues

Hernandez raises two issues for our review.  We restate these as:

    I.    Whether the trial court abused its discretion as to the admission of evidence; and

    II.    Whether the trial court abused its discretion when it did not instruct the jury as to the defense of necessity.

# Facts and Procedural History

On May 5, 2014, Hernandez was a passenger in a car driven by his neighbor, Oliver Gray ("Gray").  Indianapolis Metropolitan Police Sergeant Charles Butler ("Sergeant Butler") was on patrol that day, and observed that Gray's vehicle did not have a visible license plate.  As a result, Sergeant Butler initiated a traffic stop.  Gray pulled into a parking lot and drove through several spaces before stopping the vehicle.

---

[1] Ind. Code § 35-47-2-1(a).

[5] After stopping the vehicle, Gray admitted to Sergeant Butler that his driving privileges had been suspended. Gray was arrested.

[6] Another officer, Todd Wellmann ("Officer Wellmann"), arrived at the scene to assist Sergeant Butler. Officer Wellmann approached the passenger side of the car where Hernandez was seated and asked Hernandez to get out of the car. Hernandez complied and, as he got out of the car, told Officer Wellmann, "I have a strap in my pocket." Tr. at 76. Officer Wellmann understood this to mean that Hernandez had a gun in his pocket. Without being asked, Hernandez turned around and placed his hands on the car.

[7] When Officer Wellmann asked Hernandez what he had said, Hernandez repeated his statement and pushed out his right hip to indicate where the gun was located. When asked, Hernandez admitted that he did not have a permit to carry a handgun. Hernandez was then arrested.

[8] Officer Wellmann provided Hernandez with *Miranda* warnings, after which Hernandez agreed to continue to answer questions. Hernandez initially told Officer Wellmann that he knew the pistol had been on the floor of the car and, upon the car being stopped, Hernandez put the gun in his pocket. Officer Wellmann remained unsure of the details of Hernandez's story, and eventually Hernandez indicated that Gray owned the gun.

[9] On May 7, 2014, Hernandez was charged with Carrying a Handgun Without a License. A jury trial was conducted on September 22, 2014. During the trial, Hernandez sought admission into evidence of documentation concerning

Gray's status as a Serious Violent Felon ("SVF"). The trial court ruled this to be inadmissible.

[10] Also during the trial, Hernandez testified that he was afraid of Gray because Gray had bragged openly about having committed a robbery. Hernandez also testified that he took the handgun from Gray because Gray had threatened him, and Hernandez did not want to risk Gray harming him because the two were neighbors. Based on this testimony, Hernandez proffered proposed jury instructions as to the affirmative defenses of duress and necessity. The trial court issued the instruction on duress, but did not issue an instruction on necessity.

[11] At the conclusion of the trial, the jury found Hernandez guilty as charged. The trial court sentenced Hernandez to 365 days imprisonment, with all but four days suspended to probation.

[12] This appeal ensued.

# Discussion and Decision

## Admission of Evidence

[13] We turn first to Hernandez's contention that the trial court abused its discretion in its evidentiary rulings. Our standard of review for such matters is well settled. Rulings as to the admissibility of evidence are within the sound discretion of the trial court, and we review challenges to evidentiary rulings for an abuse of that discretion. *Hyser v. State*, 996 N.E.2d 443, 448 (Ind. Ct. App.

2013). Even where the trial court's decision was in error, we will not reverse the judgment unless the ruling prejudiced the substantive rights of the appellant. *Id.*

[14] Hernandez's challenge stems from the trial court's ruling excluding testimony and documentation concerning 1) Gray's SVF status; and 2) testimony concerning the bases upon which Gray was arrested, which included Possession of a Firearm by a SVP. Hernandez argues that the trial court's exclusion of this evidence infringed upon his constitutional rights to present a complete defense to the charge of Carrying a Handgun Without a License, given Hernandez's defensive theory of duress.

[15] A defendant in a criminal case is guaranteed by the United States Constitution the right to "'a meaningful opportunity to present a complete defense.'" *Kubsch v. State*, 784 N.E.2d 905, 924 (Ind. 2003) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). Further:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Kubsch*, 784 N.E.2d at 924 (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)).

[16] The affirmative defense of duress is defined in our statutes:

> It is a defense that the person who engaged in the prohibited conduct was compelled to do so by threat of imminent serious bodily injury to himself or another person. With respect to offenses other than felonies, it is a defense that the person who engaged in the prohibited conduct was compelled to do so by force or threat of force. Compulsion under this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure.

I.C. § 35-41-3-8(a).

[17]     Hernandez contends that Gray's SVF status and the decision of officers at the scene of Hernandez's and Gray's arrests to list as the basis for Gray's arrest Possession of a Firearm by an SVF were both relevant to and necessary for Hernandez's defensive theory. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401.[2] Though relevant, evidence may nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evid. R. 403.

[18]     Hernandez contends that the SVF-related evidence concerning Gray was "exculpatory, unique, and critical" to his defense, Appellant's Br. at 14, and directs us to two cases that he contends are analogous to his own: *Hyser*, *supra*, and *Allen v. State*, 813 N.E.2d 349 (Ind. Ct. App. 2004), *trans. denied*. Our

---

[2] Hernandez's brief quotes the definition of relevance from the Indiana Rules of Evidence that were in effect prior to January 1, 2014. This error did not affect our review.

review of the record and of the applicable case law does not bear out Hernandez's characterization of the importance of the SVF-related evidence as to Gray.

[19] At trial, evidence was introduced that Gray was arrested at the scene. Hernandez testified that he was afraid of Gray because Gray bragged about having a prior felony record, and because Gray had threatened him, ordering him to take the gun so that Gray would not have to go back to jail. It is against this evidentiary background that Hernandez sought to adduce testimony from Sergeant Butler concerning Gray's SVF status and the specific charge leveled against Gray. But as Hernandez himself notes, "[t]estimony about Gray's SVF status was not being offered to prove the truth, but to show the reasonableness of Hernandez's fear…. It is of no concern whether Gray was *actually* SVF." Appellant's Reply Br. at 2.

[20] Hernandez's argument does not, however, establish how he was prejudiced by the trial court's decision to exclude from evidence the specific information about Gray having SVF status. Hernandez designates as error the omission of a piece of information, Gray's purported SVF status. Yet Hernandez presented no specific evidence that he was aware of Gray's status at the time of the offense, let alone any evidence as to how Gray having SVF status would make more credible either Hernandez's subjective claim of duress or any objective evaluation of that claim.

[21] This differentiates Hernandez's situation from those of the cases upon which he relies, *Hyser* and *Allen*. In *Hyser*, the defendant sought to introduce evidence that he had made a child abuse report with respect to another individual, Marner, and that Marner in turn threatened Hyser, accused Hyser of committing Child Molesting, and influenced an alleged minor victim to testify against Hyser. *Id.* at 448-49. Hyser's proffered testimony was that "the allegations and testimony against him were untrue and fabricated in relation or response to the fact that he made a report to DCS" about his concerns over Marner's possible physical abuse of a minor. *Id.* at 449. That is, Hyser sought to adduce a broad set of facts that went not to the reasonableness of a state of mind, but to the very reliability of the accusations.

[22] The contrast with *Allen* is even greater. In *Allen*, the defendant was convicted of murder where, during an offer of proof, a witness, Bethel, presented extensive testimony that he and another individual, Crenshaw, had actually committed the offense for which Allen was being tried. 813 N.E.2d at 362. Bethel refused to testify in any length before the jury, however, and also refused to testify at a deposition, the transcript of which could be presented to the jury. *Id.* The court refused to permit the jury to have access to any of Bethel's testimony from the offer of proof and struck all of the limited testimony Bethel had presented before the jury. *Id.* at 362-63. On appeal, this Court concluded that Allen "had the right to present evidence that Crenshaw was involved in the commission of the crimes," and the trial court's exclusion of Bethel's testimony "impinged on Allen's right to present a complete defense." *Id.* at 363.

In *Hyser* and *Allen*, the defendants sought to adduce evidence in the form of testimony that was either actually exculpatory or that greatly undermined the credibility of accusing witnesses. The exclusion of significant portions of testimony from witnesses worked to impede Hyser's and Allen's defenses; here, Hernandez presented substantive testimony concerning his reasons for being afraid of Gray. *Hyser* and *Allen* are, then, inapposite.

We accordingly conclude that Hernandez has failed to establish that the trial court's exclusion of the issue of Gray's SVF status and of the charges against Gray prejudiced any of Hernandez's substantial rights to present a defense of duress.

## Instruction as to Necessity Defense

We turn now to Hernandez's second issue, whether the trial court abused its discretion when it denied Hernandez's proffered jury instruction concerning the affirmative defense of necessity. We review a trial court's instruction of the jury for an abuse of discretion. *Treadway v. State*, 924 N.E.2d 621, 636 (Ind. 2010). We look to 1) whether the defendant's tendered instructions correctly state the law; 2) whether the there is evidence in the record to support giving the instruction; and 3) whether the substance of the proffered instruction is covered by other instructions. *Id.* We will reverse a conviction only where the appellant demonstrates that the error in instruction prejudiced his substantial rights. *Id.*

The affirmative defense of necessity derives from the common law. *Toops v. State*, 643 N.E.2d 387, 389 (Ind. Ct. App. 1994). As adopted in Indiana, there

is a six-part test for determining whether otherwise criminal conduct is excused as a result of necessity:

> (1) the act charged as criminal must have been done to prevent a significant evil; (2) there must have been no adequate alternative to the commission of the act; (3) the harm caused by the act must not be disproportionate to the harm avoided; (4) the accused must entertain a good-faith belief that his act was necessary to prevent greater harm; (5) such belief must be objectively reasonable under all the circumstances; and (6) the accused must not have substantially contributed to the creation of the emergency. In the event of retrial on remand the foregoing elements should be incorporated into any tendered instruction on the defense of necessity.

[27] *Patton v. State*, 760 N.E.2d 672, 675 (Ind. Ct. App. 2002) (citing *Toops*, 643 N.E.2d at 390). As this Court observed in *Toops*:

> Although the confines of the necessity defense vary from jurisdiction to jurisdiction, the central element involves the emergency nature of the situation. That is, under the force of extreme circumstances, conduct that would otherwise constitute a crime is justifiable and not criminal because of the greater harm which the illegal act seeks to prevent.

*Toops*, 643 N.E.2d at 389.

[28] Hernandez argues that there was evidence presented at trial to support giving his proffered instruction as to necessity, and that the trial court's failure to issue the instruction was reversible error. At trial, Hernandez testified that Gray pulled up alongside him as Hernandez was walking to purchase beer, and that Gray badgered him until finally Hernandez got in the car. Hernandez testified that police pulled the car over shortly afterward and that Gray did not stop immediately, because Gray was carrying a gun and would have gone to jail if

found with the gun. According to Hernandez, Gray told Hernandez to take the gun "or else," Tr. at 100, from which Hernandez concluded that Gray was threatening to shoot him if he did not take the gun. At some point, the gun ended up in Hernandez's lap. Hernandez took the gun and put it in his pocket.

[29] We cannot agree with Hernandez's contention that he produced evidence as to each of the six elements of the necessity defense. While Hernandez testified at trial that he was afraid of Gray because the two were neighbors, an unparticularized fear of reprisal does not constitute the type of emergency contemplated by a defense of necessity. *See, e.g.*, *Patton*, 760 N.E.2d at 676-77 (reversing for failure to instruct on necessity where the defendant argued that he had no alternative but to retrieve a gun where a street vendor was "savagely beating" the defendant's brother); *Toops*, 643 N.E.2d at 387 (reversing for failure to instruct the jury on necessity where the defendant, who was intoxicated, grabbed the wheel of a car and drove after the vehicle's driver "panicked at the sight of police and dove into the back seat"). Nor was Hernandez's subjective belief that he had to retain the handgun after Gray had been removed from the vehicle "objectively reasonable under all the circumstances." *Patton*, 760 N.E.2d at 675. As the State notes, Hernandez could easily have slipped the gun out of his pocket and onto the floor and informed Officer Wellmann of the gun's presence.

[30] Accordingly, we find no abuse of discretion in the trial court's decision not to issue Hernandez's proffered instruction as to necessity.

# Conclusion

Hernandez has failed to establish that he was prejudiced by the trial court's exclusion of Gray's purported SVF status and the stated reasons for his arrest, assuming *arguendo* the relevance of that information. Hernandez did not present evidence at trial sufficient to support giving an instruction to the jury concerning the defense of necessity.

Affirmed.

Riley, J., and Barnes, J., concur.