

FILED

Feb 18 2019, 5:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deryan Oneil Cook, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | February 18, 2019 <br><br> Court of Appeals Case No. <br> 18A-CR-348 <br><br> Appeal from the Vanderburgh <br> Superior Court <br><br> The Honorable Robert J. Pigman, <br> Judge <br><br> Trial Court Cause No. <br> 82D03-1706-MR-3487 |

**Pyle, Judge.**

# Statement of the Case

Deryan Cook ("Cook") appeals his conviction by jury of murder.[1] He argues that the trial court abused its discretion in excluding evidence and that his sixty-five (65) year sentence is inappropriate in light of the nature of the offense and his character. Concluding that the trial court did not abuse its discretion and that Cook's sentence is not inappropriate, we affirm the trial court's judgment and sentence.

We affirm.

# Issues

1.  Whether the trial court abused its discretion in excluding evidence.

2.  Whether Cook's sentence is inappropriate in light of the nature of the offense and his character.

# Facts

On June 4, 2017, Michael Turpin's ("Turpin") truck broke down. After unsuccessfully attempting to find someone to pick him up, he and Jamie Baker ("Baker") decided to walk to a friend's house on the other side of town. As they walked across a Walgreen's parking lot at approximately 12:30 a.m. the following morning, Turpin noticed twenty-year-old Cook approach them from

---

[1] IND. CODE § 35-42-1-1.

a nearby gas station. Cook gave Turpin a "fucked up look," and Turpin told Baker to walk faster. (Tr. Vol. 2 at 89). As Turpin and Baker began to walk down a residential street, Turpin turned around and noticed that Cook was standing in front of the Walgreen's and staring at them. Turpin told Baker to "pick up the pace." (Tr. Vol. 2 at 89-90). A few minutes later, Turpin heard Cook's footsteps behind them. Cook yelled at Turpin and Baker to "get on the fucking ground" and began shooting at them. (Tr. Vol. 2 at 94). Turpin turned around and got a clear view of Cook, whose face was illuminated by a street light. Turpin grabbed Baker and heard "like three more shots" and then a click. (Tr. Vol. 2 at 97). Cook took off running, and Turpin realized that Baker had been shot in the center of her back. Baker died before emergency personnel arrived at the scene.

[4]     Cook returned to his nearby apartment where several of his roommates were listening to a police scanner. Cook told roommate Alexander Southard ("Southard") that he "had to do it" and that he had "shot four and saved five." (Tr. Vol. 2 at 212, 213). Cook later told Southard that he had gone out to rob somebody and that he had seen Turpin and Baker walking down the street. According to Cook, Baker was carrying a purse and "if she wasn't going to give it up [I] was going to shoot her and that's what happened." (Tr. Vol. 2 at 214). Cook further explained to Southard that he had told Turpin and Baker "to lay down or whatever and they took off running." (Tr. Vol. 2 at 214). According to Cook, he had then shot them. Cook also told Southard that he had used a .40 caliber handgun.

[5] A few days later, Southard told the police what Cook had told him about Baker's murder. Turpin then identified Cook in a photo array, and Cook was brought in for questioning by Detective Peter DeYoung ("Detective DeYoung"). Cook told Detective DeYoung that he had been with Jerome Height ("Height") when Height had attempted to rob and had then shot Baker. Cook told the detective that he, Cook, had run back to his apartment after the shooting and cried. Cook also stated that he did not "mess around with guns." (Tr. Vol. 3 at 62). Cook later admitted to the detective that he had had possession of the murder weapon a week before the murder and that he had given it to Height. Cook also admitted that he had stood at the Walgreen's, had watched Turpin and Baker, and had then followed them. While Cook was following the couple, he had heard gunshots and had taken off running. Cook was sure that Height had fired the shots.

[6] Cook was arrested and charged with murder and felony murder. The State also requested that Cook's sentence be enhanced pursuant to INDIANA CODE § 35-50-2-11 because he had knowingly used a firearm in the commission of the crime.

[7] At trial, Turpin identified Cook as the shooter. When defense counsel challenged Turpin's identification and suggested that Cook happened to "magically [be] standing under that street light," Turpin responded as follows:

> It's not magically standing under that street light. That's where he told us to stop and pointed a gun at me and shoot and I seen his face, I seen the smirk on his face. The same smirk he had at

the Walgreens doors and the same one I seen in that picture and I will never forget it. I dream about it every night.

(Tr. Vol. 2 at 117).

[8] In addition, forensic pathologist Dr. Christopher Kiefer ("Dr. Kiefer") testified that Baker had died from the gunshot wound to her back. According to Dr. Kiefer, Baker's pulmonary artery was injured "such that blood was not effectively being pumped to the lungs. It was spilling out into the chest so this [led] to both [exsanguination] within the body and the lack of heart to function because it [was] not moving fluid properly." (Tr. Vol. 3 at 27). Indiana State Police Firearms Examiner Angela Kilmon further testified that the bullet that had killed Baker had been fired from a .40 caliber gun.

[9] Detective DeYoung testified that he had followed up on his interview with Cook by questioning Height, who had denied shooting Baker. During cross-examination of Detective DeYoung, defense counsel requested a hearing outside the presence of the jury and asked the trial court to allow her to ask the detective "if he had received information from Karen Montgomery [("Detective Montgomery")] that Jerome Height [had] allegedly confessed to committing the shooting." (Tr. Vol. 3 at 169). Defense counsel further explained as follows:

> My rational[e] for that is not to introduce it for the truth of the matter asserted but to show the steps that Detective DeYoung took in his investigation. I believed that at the time he received this information he did not do anything with it and I want to show the jury that at that point he had developed a bias or a belief that [Cook] was the shooter, that he took no steps to

establish that there's any other possibility. I also think it goes to the quality and thoroughness of his investigation.

(Tr. Vol. 3 at 169-70).

[10] The State pointed out that the statement that Cook sought to admit was a jail house conversation in which Height had allegedly told Geonovan Bailey ("Bailey") that he had shot Baker. Bailey had then allegedly told Detective Montgomery what Height had told him, and Detective Montgomery had allegedly told Detective DeYoung what Bailey had told her. According to the State, defense counsel wanted "to get three layers of hearsay in. She want[ed] to get that out there for the truth of the matter asserted. . . . She [was] attempting to go around – to do an end round- end run around the hearsay rule to gain exactly what is not permitted under the hearsay rule." (Tr. Vol. 3 at 172-73). The State further pointed out that defense counsel could have subpoenaed Bailey or requested a continuance to look for Height, who had a warrant out for his arrest. The trial court concluded that Cook's proffered evidence was hearsay and excluded it.

[11] The jury convicted Cook of murder and felony murder, and Cook admitted to the firearm enhancement.[2] At the sentencing hearing, the State pointed out that the crime was an "outrageous senseless act of shooting someone in the back as they are trying to flee, trying to avoid this." (Tr. Vol. 4 at 10). Cook's Pre-

---

[2] The trial court vacated Cook's felony murder conviction.

Sentence Investigation Report revealed that although Cook had no prior felony convictions, he had a history of delinquent behavior as a juvenile and had been adjudicated to be a delinquent child for possession of marijuana, conversion, and failure to stop. He had also been unsuccessfully discharged from probation as a juvenile. In addition, Cook had been using marijuana daily since he was seventeen or eighteen years old, and at the time of his arrest, he had been smoking approximately three to six marijuana blunts per day.

[12] Before imposing Cook's sentence, the trial court found Cook's youth and relative lack of a prior criminal history to be mitigating factors and the nature and circumstances of the crime as pointed out by the State to be an aggravating factor. The trial court sentenced Cook to fifty-five (55) years for murder and enhanced the sentence by ten (10) years because he had knowingly used a firearm in his commission of the offense, for a total sentence of sixty-five (65) years.

[13] Cook now appeals his conviction and sentence.

# Decision

## 1. Exclusion of Evidence

[14] We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Teague v. State*, 978 N.E.2d 1183, 1187 (Ind. Ct. App. 2012). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court had misinterpreted the law. *Id.*

[15] Cook first argues that the trial court abused its discretion when it excluded evidence that: (1) Height had allegedly told Bailey that he had shot Baker; (2) Bailey had allegedly told Detective Montgomery what Height had told him; and (3) Detective Montgomery had allegedly told Detective DeYoung what Bailey had told her. Cook refers to this evidence as "Height's Confession." (Cook's Reply Br. at 5). The State responds that the trial court properly excluded this evidence because it was inadmissible hearsay.

[16] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible unless it falls within one of the exceptions to the rule against hearsay. Evid. R. 802.

[17] Here, Cook contends that Height's confession is not hearsay because it was not offered to prove the truth of the matter asserted. Rather, Cook argues that the confession was admissible to show the course of the investigation. Specifically, Cook contends that this evidence was admissible "to prove Detective DeYoung's bias toward Cook and refusal to look for another suspect." (Cook's Br. at 18).

[18] An out-of-court statement introduced to explain why a particular course of action was taken during a criminal investigation is not hearsay because it was not offered to prove the truth of the matter asserted. *Goodson v. State*, 747 N.E.2d 1181, 1185 (Ind. Ct. App. 2001), *trans. denied*. Even so, we require a reasonable level of assurance that such testimony was neither offered by the

proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Id.*

[19] At the outset, we note that Detective DeYoung interviewed Height after interviewing Cook, thus refuting Cook's contention that the detective refused to look for another suspect and was biased against Cook. The out-of-court statements allegedly made by Height, Bailey, and Detective Montgomery have little or no bearing on Detective DeYoung's particular course of action during the investigation and are therefore hearsay.

[20] In addition, because the out-of-court statements involve hearsay within hearsay, which is also known as multiple or double hearsay, the statements are not admissible unless each layer of hearsay qualifies under an exception to the hearsay rule. *See Teague*, 978 N.E.2d at 1187; *see also* Evid. R. 805 (stating that "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."). Here, Cook has failed to set forth how each layer of the out-of-court statements allegedly made by Height, Bailey, and Detective Montgomery qualifies as an exception to the hearsay rule. The trial court did not abuse its discretion by excluding this evidence.[3]

---

[3] Cook also argues that the trial court violated his right to present a defense when it excluded Height's confession. However, Cook has waived this issue. Our review of the trial transcript reveals that Cook did not raise this issue at trial. A trial court cannot be found to have erred as to an issue that it never had the opportunity to consider. *Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Accordingly, a party that raises an issue for the first time on appeal has waived that issue. *Id.* Waiver notwithstanding, we find no error. The facts of *Hyser v. State*, 996 N.E.2d 443 (Ind. Ct. App. 2013) and *Allen v. State*, 813 N.E.2d 349 (Ind.

## 2. Inappropriate Sentence

Cook also argues that his sixty-five (65) year sentence was inappropriate in light of the nature of the offense and his character. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. The defendant bears the burden of persuading this Court that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on the "culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008).

When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence is the starting point the Legislature has selected as an appropriate sentence for the crime committed. *Childress*, 848 N.E.2d at 1081. Here, Cook was convicted of murder. The sentencing range for murder is from forty-five (45) to sixty-five (65) years, with an advisory sentence of fifty-five (55) years. I.C. § 35-50-2-3. The trial court sentenced Cook to fifty-five (55) years for murder, which is the advisory sentence. Cook also admitted that he had used a firearm in the commission of the offense. The sentencing range for this

---

Ct. App. 2004), *trans. denied*, the cases to which Cook directs us, are distinguishable from the facts of this case because the defendants in those cases were not attempting to admit hearsay evidence.

sentencing enhancement is from five (5) to twenty (20) years. I.C. § 35-50-2-11. The trial court enhanced Cook's fifty-five (55) year advisory sentence by ten (10) years, for a total sentence of sixty-five (65) years.

[24] With regard to the nature of the offense, Cook, who had never met Baker, shot the woman in the back as she walked away and attempted to avoid any conflict with him. With regard to his character, Cook had delinquency adjudications and an unsuccessful discharge from probation as a juvenile. He had also used marijuana daily for three to four years and, at the time of his arrest, had smoked three to six blunts per day.

[25] Based on the nature of the offense and his character, Cook has failed to persuade this Court that his sixty-five (65) year sentence, which includes a fifty-five (55) year advisory sentence for murder as well as a ten (10) year enhancement because he used a firearm in the commission of the offense, is inappropriate.

[26] Affirmed.

Najam, J., and Crone, J., concur.