## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2020, 7:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Suzy St. John
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Megan M. Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joshua Walker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 18, 2020

Court of Appeals Case No.
19A-CR-1072

Appeal from the
Marion Superior Court

The Honorable
Clark Rogers, Judge

Trial Court Cause No.
49G25-1803-F6-7796

**Kirsch, Judge.**

[1] Joshua Walker ("Walker") was convicted after a jury trial of possession of cocaine[1] as a Level 6 felony and was adjudicated as an habitual offender.[2] He raises one issue on appeal, which we restate as whether the trial court abused its discretion when it denied Walker's request to elicit testimony regarding a corrections officer who was accused of planting contraband on an inmate.

[2] We affirm.

## Facts and Procedural History

[3] In March 2018, Walker was residing at Duvall Residential Center ("Duvall") through Marion County Community Corrections. *Tr. Vol. 2* at 15. Duvall was understaffed at the time, as it still was at the time of trial, employing twenty-seven security officers instead a full staff of forty security officers. *Id.* at 23. Shortly before midnight on March 2, 2018, correctional officers Michael Nesbitt ("Nesbitt") and Brian Ahmed ("Ahmed") were conducting a security check in one of the bathrooms. *Id.* at 33. Nesbitt and Ahmed observed Walker sitting in one of the open toilet stalls. *Id.* at 34. Walker appeared to be concealing something in his hand, so Nesbitt confronted Walker and noticed plastic baggies in Walker's hand. *Id.* Nesbitt asked Walker to step away from the toilet and place his hands behind his back. *Id.* Walker began cursing at Nesbitt

---

[1] *See* Ind. Code § 35-48-4-6(a).

[2] *See* Ind. Code § 35-50-2-8.

and Ahmed. *Id.* As Ahmed tried to handcuff Walker, Walker punched Ahmed and then fled to a sleeping dorm. *Id.* at 18, 34-36.

[4]     When Walker reached the dorm, Nesbitt observed Walker toss something, so Nesbitt stopped and retrieved the items that Walker had discarded. *Id* at 36; *State's Ex.* 1. Nesbitt ordered Walker to get on the ground and put his hands behind his back. *Tr. Vol. 2* at 36. When Walker refused to comply, Nesbitt warned that he would use his pepper spray. *Id.* Walker refused to comply and continued cursing at Nesbitt. *Id.* Nesbitt then squirted pepper spray at Walker several times, and Walker eventually surrendered. *Id.* at 36-37; *State's Ex.* 1. The substance that Nesbitt retrieved tested positive for cocaine. *Tr. Vol. 2* at 49-50; *State's Exs.* 2-4.

[5]     On March 6, 2018, the State charged Walker with possession of cocaine as a Level 6 felony, battery against a public safety official as a Level 6 felony, resisting law enforcement as a Class A misdemeanor, and possession of a synthetic drug or synthetic drug lookalike as a Class A misdemeanor. *Appellant's App. Vol. II* at 20-21. On October 3, 2018, the State filed an information alleging that Walker was an habitual offender. *Id.* at 66. The State later filed a motion to dismiss the charges for resisting law enforcement and possession of a synthetic drug; on February 21, 2019, the trial court granted the request. *Id.* at 87-88.

[6]     The jury trial commenced on February 26, 2019. During opening argument, Walker's counsel stated that "Duvall Residential Facility is a Mickey Mouse

Operation." *Supp. Tr. Vol. 2* at 25. He also contended that the video of the incident would contradict Nesbitt's testimony: "Additionally, you're not going to see, I guess, what Officer Nesbitt is going to testify to reflected in the video." *Id.* at 26. During his cross-examination of Andrew Steagall ("Steagall"), Chief of Security at Duvall, Walker attempted to elicit testimony from Steagall that nearly a year after Walker's incident, Elijah Taylor ("Taylor"), a former correctional officer at Duvall, was accused of planting drugs on a resident; the State objected. *Tr. Vol. 2* at 13, 20-22. During testimony on Walker's offer to prove, Steagall testified that Taylor was not yet employed by Duvall when the incident with Walker occurred, stating that Taylor began working at Duvall in August or September of 2018, five or six months after the incident with Walker. *Id.* at 22. Steagall also stated that he was aware that Taylor had been fired from Duvall, but Steagall explained that he did not know if the allegations about planting drugs was related to Taylor's termination. *Id.* Steagall also testified that Taylor had not been charged with a crime related to the allegation. *Id.* at 21-22. The trial court sustained the State's objection. *Id.* at 22. During closing argument, Walker's counsel reiterated his argument that Nesbitt lied on the stand: "Nesbitt's statement of what happened is just complete and total fabrication." *Tr. Vol.* 2 at 57. He also accused Nesbitt on planting cocaine on Walker: "I don't know why Mr. Nesbitt did decide who, this guy Walker, I'm going to drop some cocaine on him." *Id.* at 58.

[7]     The jury found Walker guilty of possession of cocaine but not guilty of battery against a public safety official. *Id.* at 62. Walker waived his right to a jury trial

on the habitual-offender enhancement and admitted to being an habitual offender. *Id*. at 64-67. On April 11, 2019, the trial court sentenced Walker to 365 days in the Indiana Department of Correction for possession of cocaine, enhanced by two years for being an habitual offender. *Id*. at 77-78. Walker now appeals. Additional facts will be presented as necessary.

## Discussion and Decision

[8] Walker argues that the trial court abused its discretion when it ruled that Walker could not elicit Steagall's testimony that Taylor had been accused of planting drugs on an inmate. Even though Taylor did not work at Duvall at the time of Walker's incident, Walker argues this evidence was probative and vital to his defense, which was that Nesbitt planted the cocaine on Walker. Walker claims the exclusion of this evidence violated his constitutional right to present a defense.

[9] We review evidentiary rulings for an abuse of discretion. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). An abuse of discretion occurs when the trial court's judgment "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id*. In determining whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact. *Hyser v. State*, 996 N.E.2d 443, 448 (Ind. Ct. App. 2013), *trans. denied*.

[10] Defendants are guaranteed a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The right to present a

defense is a fundamental element of due process. *Kubsch v. State*, 784 N.E.2d 905, 924 (Ind. 2003). However, this right is not absolute. *Marley v. State*, 747 N.E.2d 1123, 1132 (Ind. 2001). The defendant must also "comply with *established rules of procedure and evidence* designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (emphasis added). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Ind. Evidence Rule 401. The two components of relevant evidence are materiality and probative value. *Kubsch*, 784 N.E.2d at 924.

[11] In greater detail, Walker contends that the evidence about Taylor was relevant because Duvall's chronic understaffing suggested that Duvall was not hiring suitable employees. Walker contends this alleged inability to hire qualified employees made Duvall employees more susceptible to corruption.

> Had the jury been made aware of the corruption involving Taylor, it could have assessed that there are no mechanisms in place to prevent a dishonest person, who would go as far as framing a resident by planting drugs, from being hired into a position with daily contact with residents. The jury was entitled to determine whether a culture of corruption existed among Duvall correctional officers and whether Walker was a victim of that.

*Appellant's Br.* at 13.

[12]     Here, the testimony Walker sought to elicit regarding Taylor was not relevant. Taylor did not work at Duvall at the time of Walker's incident. *Tr. Vol. 2* at 21-22. The accusation that Taylor planted contraband on an inmate several months after Walker's incident does not make it more or less probable that Nesbitt planted drugs on Walker. Thus, testimony about Taylor was neither material nor probative, and the probable impact on the jury would have been low. *See* Evid. R. 401; *Hyser*, 996 N.E.2d at 448. Thus, the proffered evidence was irrelevant, and the trial court did not abuse its discretion in sustaining the State's objection and excluding the evidence. *See Guilmette*, 14 N.E.3d at 40. This also disposes of Walker's claim that the trial court's ruling violated his right to present a defense because by proffering irrelevant evidence, Walker failed to "comply with *established rules of procedure and evidence* designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *See Marley*, 747 N.E.2d at 1132. Thus, by sustaining the State's objection, the trial court did not violate Walker's right to present a defense. *See id*.

[13]     Nonetheless, Walker likens the impact on his defense by the exclusion of testimony about Taylor to the situation in *Hyser*, 996 N.E.2d at 443. In *Hyser*, the defendant was deprived of a meaningful opportunity to present a complete defense when the trial court excluded his proffered testimony that a third person fabricated a child's accusation that the defendant molested the child in retaliation against the defendant for reporting the third person's physical abuse of the child. We determined that the evidence of alleged fabrication was relevant, exculpatory, unique, and critical to Hyser's defense. *Id*. at 449-50.

We also observed that the defense Hyser wished to present "was not implausible and that the jury may have believed that his version of the facts was true." *Id.* at 449.

Walker's reliance on *Hyser* is misplaced. In *Hyser*, the defendant claimed the victim's stepfather coached him into fabricating the allegations of child molesting in retaliation for the defendant reporting the stepfather to DCS for physical abuse. *Hyser*, 996 N.E.2d at 445-47. The defendant in *Hyser* provided a foundation for his theory, included evidence that other people had seen the stepfather physically abuse the child. *Id.* Here, Walker presented no evidence to support his theory that Nesbitt planted the cocaine or any evidence that connected Nesbitt to Taylor. Rather, Walker's theory relies on speculation, which standing alone, does not make Walker's theory relevant. *See Hinkle v. State*, 97 N.E.3d 654, 663-64 (Ind. Ct. App. 2018) (trial court did not abuse its discretion in refusing to allow defendant to present evidence of retaliation when there had been no question of retaliation and defendant relied solely on speculation to support claim that victim had invented the allegations), *trans. denied*.

We also reject Walker's argument that Duvall's staffing shortages were relevant to his claim that Nesbitt planted the cocaine. Without evidentiary foundation, Walker contends these staffing shortages helped create a culture of corruption at Duvall. This claim is groundless and wildly speculative. We concur with the State's assessment: "one correctional officer being accused of planting drugs on a resident on one occasion does not establish a culture of corruption, impugn

the hiring practices of Duvall, or determine the propensity of other officers to plant drugs; therefore, the accusations against Taylor were not relevant." *Appellee's Br.* at 11. The trial court did not abuse its discretion in ruling that Walker's proffered evidence about Taylor planting evidence on an inmate was inadmissible.

Affirmed.

Bailey, J., and Mathias, J., concur.