STATE OF NEBRASKA, APPELLEE, V. RALPH E. THOMAS, APPELLANT.

462 N.W.2d 862

Filed November 16, 1990.    No. 89-875.

Rodney W. Smith for appellant.

Robert M. Spire, Attorney General, and Alfonza Whitaker for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Ralph E. Thomas appeals the Knox County District Court's denial of his motion to vacate his conviction and sentence pursuant to the Postconviction Act, Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989). In 1981, Thomas was convicted of first degree assault and sentenced to 3 to 5 years' imprisonment. He was released on bond on April 23, pending his direct appeal to this court. This court affirmed his conviction on December 28, 1981. See *State v. Thomas*, 210 Neb. 298, 314 N.W.2d 15 (1981). Thomas failed to appear to begin serving his sentence and, following a jury trial on July 6, 1989, was convicted of the charge of failure to appear. He was sentenced to imprisonment for 1 year, to be served consecutively to his previous sentence for first degree assault. This court affirmed his conviction for failure to appear on August 10, 1990. See *State v. Thomas, ante* p. 84, 459 N.W.2d 204 (1990). Thomas has been paroled on both charges after serving approximately 2 1/2 years on the two sentences.

The district court denied Thomas' motion to vacate his first degree assault conviction and sentence after a hearing on April 17, 1989. The court determined that Thomas had failed to prove the performance of his attorney, Richard McCoy, was deficient and that McCoy performed at least as well as a criminal trial lawyer with ordinary training and skill in the criminal law in the area. The court also decided that Thomas failed to demonstrate that but for McCoy's failure to appear at the motion to consolidate, at the taking of 22 depositions before trial, and at Thomas' first scheduled sentencing hearing, the result of the proceeding would have been different. Thomas appeals the district court's ruling. The State's motion for

summary affirmance was denied by this court on March 1, 1990.

On August 4, 1980, Thomas, along with his two brothers who were codefendants in the assault prosecution, assaulted Thornton Rave in Santee, Knox County, Nebraska. Rave, a part-time police officer in Santee, was investigating a report that the Thomas brothers were breaking windows out of a police car parked at the residence of the chief of police, Dean Kitto. As Rave was questioning a neighbor about the broken windows, he was confronted and attacked by the Thomas brothers. Ralph Thomas struck Rave with his fist, Gary Thomas hit Rave with a board, and Randy Thomas jumped on top of Rave as he fell to the ground. Rave testified that as a result of the beating he suffered a broken eardrum, a slight concussion, bruises, scratches, and a permanent loss of hearing.

Ralph Thomas claimed he struck Rave in self-defense. He stated that he and his brothers approached Rave to ask him to take away the gun and Mace of Kitto, who they claimed was intoxicated and had earlier sprayed Gary Thomas with Mace in a local tavern. Thomas testified that as he approached Rave to discuss the situation, Rave tried to strike him.

Thomas' assigned errors can be summarized as an ineffective assistance of counsel claim. First, he claims the district court erred in denying him the opportunity to depose an attorney, a physician, and a witness for the State. He claims that he needed the depositions in order to demonstrate that his attorney, Richard McCoy, was ineffective by failing to call an expert medical witness to testify as to the victim's injuries, to establish what the standard of practice for a criminal trial attorney was in the area, and to show that McCoy's failure to appear at the State's taking of the deposition of Cora Jones harmed him because Jones was involved in a feud with his family and was not a credible witness. Second, he claims the court erred in not permitting an attorney to testify as to the standard of practice of a criminal trial lawyer in the area. He offered the testimony to demonstrate that McCoy's performance fell below this standard. Last, he claims that McCoy was ineffective as counsel because he failed to appear at the hearing on the motion to

consolidate the trials of Thomas and his two brothers, at the taking of 22 depositions prior to trial, and at Thomas' first scheduled sentencing hearing.

Section 29-3001 permits "[a] prisoner in custody under sentence" to file a motion asking the court to vacate and set aside his sentence. Since the appellant in this case is currently on parole, it is necessary to determine whether a prisoner who has been paroled is "in custody under sentence" for purposes of the Postconviction Act.

In *Jones v. Cunningham*, 371 U.S. 236, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963), the U.S. Supreme Court held that a parolee was "in custody" for purposes of habeas corpus relief within the meaning of 28 U.S.C. § 2241 (1958). The Court stated that even though the Virginia Parole Board had released the petitioner from physical imprisonment, it imposed conditions upon him which significantly confined and restrained his freedom. The Court stated that this was enough to keep him "in custody" of the Virginia Parole Board within the meaning of the habeas corpus statute. *Jones, supra.*

In *State v. Losieau*, 180 Neb. 696, 144 N.W.2d 435 (1966), this court held that a defendant was "in custody under sentence" for purposes of the Postconviction Act even though the defendant had not yet begun to serve the imposed sentence. The defendant was sentenced on a burglary conviction as a habitual criminal and was paroled 9 years later. He violated his parole and was sentenced again on new charges. He was returned to the penitentiary to finish serving his first sentence and sought to challenge his second conviction under the Postconviction Act before he began serving it. This court stated that the Postconviction Act is a comprehensive postconviction measure embracing federal and state constitutional claims and is broader as to the basis for relief than the federal habeas corpus remedies. The court concluded that in order to safeguard the defendant's rights and avoid the dangers of delaying the defendant's postconviction remedies until he was serving his second sentence, relief under the Postconviction Act was available even though the defendant had not begun to serve his sentence. *Losieau, supra.*

The U.S. Supreme Court has held that a parolee is "in

custody" for purposes of the habeas corpus statutes. See *Jones, supra*. This court has stated that the Postconviction Act is broader as a basis for relief than the federal remedies. It has determined, in keeping with a broad reading of the act, that under the act a prisoner may challenge a conviction even if he has not yet begun to serve his sentence. We conclude that a broad reading of the act also includes permitting a parolee the right to challenge his conviction under the act.

As with the petitioner in *Jones, supra*, Thomas has been released from physical custody. However, he is not free from all restraints of the correctional system. He remains under the jurisdiction of the Nebraska Board of Parole until his term of parole is finished satisfactorily. See Neb. Rev. Stat. § 83-1,121 (Reissue 1987). He is subject to revocation of his parole and return to prison if he violates the terms of his parole in any way. See Neb. Rev. Stat. § 83-1,119 (Reissue 1987). As a condition of parole he may be required to be employed, remain in a certain geographical area unless granted written permission to leave the area, report to his parole officer, submit to certain medical or psychological treatment, refrain from associating with certain persons, or abide by any other conditions determined by the Board of Parole. See Neb. Rev. Stat. § 83-1,116 (Reissue 1987). Thomas does not possess the same degree of liberty and freedom as a citizen not under the jurisdiction of the Board of Parole. The restrictions imposed upon a prisoner who is paroled are sufficient to render that person "in custody under sentence" for purposes of the Postconviction Act. Thomas falls within the definition of § 29-3001 and is permitted to pursue all remedies available under the act. We now reach the merits of his claim.

One seeking postconviction relief has the burden of establishing a basis for such relief. *State v. Kern*, 232 Neb. 799, 442 N.W.2d 381 (1989); *State v. Luna*, 230 Neb. 966, 434 N.W.2d 526 (1989). One is not entitled to relief under the act merely because he believes that his trial was imperfect. *State v. Landers*, 212 Neb. 48, 321 N.W.2d 418 (1982). Rather, the person requesting relief under the act must allege facts that constitute a denial of his rights under the Nebraska or federal Constitution, causing the judgment against him to be voidable.

*State v. Start*, 229 Neb. 575, 427 N.W.2d 800 (1988). The findings of the postconviction hearing court will not be disturbed unless clearly erroneous. *State v. Luna, supra.*

First, we will consider together Thomas' requests to take the deposition of an attorney and to present testimony of another attorney, Phyllis Beck, in order to establish the standard of practice for a criminal trial attorney in the area. Since Nebraska law prohibits expert testimony on matters of law, we need not analyze these assigned errors under the standards applicable to ineffective assistance of counsel claims.

In *State v. Ohler*, 219 Neb. 840, 366 N.W.2d 771 (1985), one of the errors assigned on appeal was the lower court's refusal to permit expert testimony regarding the standard of practice for a criminal trial attorney in the area. This court stated that expert testimony is generally not admissible as proof that the assistance of counsel in a criminal case was ineffective. This court reaffirmed the holding in *Ohler* in *State v. Gagliano*, 231 Neb. 911, 438 N.W.2d 783 (1989).

Under the rule in *Ohler*, Thomas may not present the testimony of Beck as to the standard of practice for a criminal trial attorney in the area in order to aid his ineffective assistance of counsel claim. Since he is not permitted to present the evidence at the postconviction hearing, taking the deposition of Beck would be futile. The trial court did not abuse its discretion in refusing Thomas' discovery request to take the deposition of an attorney or his request to present the testimony of Beck.

The sixth amendment to the U.S. Constitution guarantees a person accused of a crime the right to counsel during the criminal prosecution. The Nebraska Constitution has a similar provision. See Neb. Const. art. I, § 11. The accused is entitled to the assistance of an attorney to ensure that he receives a fair trial and is able to actively combat the prosecution's charges in an adversarial proceeding. See *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The right to counsel means the right to the effective assistance of counsel. *Strickland, supra* (quoting *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)). In order to prove that his counsel was ineffective so as to render his trial unjust, therefore requiring reversal of his conviction, the convicted

defendant must address two components. First, he must show that his counsel's performance was defective. This requires showing that his counsel's representation fell below the prevailing professional standards of reasonableness in the area. Second, he must show that his counsel's deficient performance prejudiced his defense. To prove prejudice, the defendant must show that there was a reasonable probability that but for the conduct of his counsel, the result of the proceeding would have been different. *Strickland, supra.*

Nebraska requires that the defendant bear the same burden in making a postconviction ineffective assistance of counsel claim.

> "When, in a postconviction motion, a defendant alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as an attorney with ordinary training and skill in the criminal law in the area. Further, there must be a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions."

*State v. Meis*, 233 Neb. 355, 360, 445 N.W.2d 610, 614 (1989) (quoting *State v. Patterson*, 232 Neb. 304, 440 N.W.2d 242 (1989)). See, also, *State v. Domingus*, 234 Neb. 267, 450 N.W.2d 668 (1990); *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990).

We begin with the defendant's discovery requests. It is well established that the trial court has broad discretion in granting the discovery requests of defense counsel, and error can be founded only upon an abuse of discretion by the court. *State v. Isley*, 195 Neb. 539, 239 N.W.2d 262 (1976). In this postconviction proceeding, Thomas sought to take the depositions of a physician, another attorney, and Cora Jones in order to facilitate the making of his ineffective assistance of counsel claim against his attorney, Richard McCoy. We know of no precedent that permits a defendant, in a postconviction proceeding, to request additional discovery which would facilitate making that same postconviction claim. The

defendant is "fishing" for evidence to support his ineffective assistance of counsel claim and has not supplied us with authority granting him the right to discover evidence, as opposed to his right under the Postconviction Act to present evidence he already possesses. Thomas has made no showing that any information he may gain in these depositions will aid him in proving that his counsel was ineffective. Rather, the one deposition he was permitted to take, that of his counsel, McCoy, establishes that McCoy performed adequately as counsel to Thomas.

Thomas claims that McCoy was ineffective because he failed to call a medical expert to testify at trial to the discrepancies in testimony between Thornton Rave's claimed injuries and other witness testimony as to how the assault on Rave occurred. In his deposition McCoy testified that he did not call a medical witness because the State was not going to call one either. He did not believe that Rave, as a layperson, could competently testify as to the extent of his injuries and did not want to provide needed medical testimony for the State. This was a strategic decision by McCoy, and although in hindsight it may have been a mistake given the fact that the court allowed the testimony of Rave, McCoy's decision was not unreasonable. His performance in this instance did not fall below acceptable standards of practice for a criminal trial attorney in the area. Thus, Thomas has failed to satisfy the requirements of the first component of the *Strickland* test. The trial court did not abuse its discretion by disallowing Thomas' discovery request.

Thomas next claims that because McCoy did not appear at the taking of the deposition of Cora Jones, the fact that she was "feuding" with the Thomas family was not brought out. Thomas claims that this "feud" bears on her credibility as a witness and McCoy's failure to establish this was evidence that he was ineffective as Thomas' counsel. Even if we assume that the failure to attend the deposition of Jones was conduct that fell below the reasonable standard of practice for a criminal trial attorney in the area, Thomas has failed to allege any facts that show he was prejudiced by McCoy's actions. He has failed to establish what Jones would have said had she been questioned about the feud. McCoy testified in his deposition

that he received copies of all the depositions taken by the State before trial. Presumably this included Jones' deposition. McCoy cross-examined Jones regarding her feelings about the Thomas brothers when she was called as a witness at trial. Jones testified that she bore no hard feelings against the Thomas brothers.

Jones was called as a witness by the State primarily because she was an eyewitness to the assault. McCoy cross-examined her extensively on her perception of the event, and she was also questioned during her deposition about what she saw. It is possible that the "feud" theory might have been pursued more aggressively if McCoy had been present at her deposition. However, extensive questioning about her relationship with the Thomas brothers would have made very little difference in the impact of her testimony. As discussed above, the value of Jones' testimony was that she witnessed the assault. Even if the jury had found Jones to be unbelievable, her testimony was corroborated by several other witnesses. Thomas was not prejudiced by McCoy's failure to attend Jones' deposition and thus has failed to establish a necessary element of an ineffective assistance of counsel claim. Consequently, the trial court did not abuse its discretion by refusing to grant Thomas' request to take a second deposition of Jones.

Last, we turn to Thomas' claim that his attorney's failure to appear at his first sentencing hearing, at the hearing on the motion to consolidate, and at the taking of the depositions of the State's witnesses constitutes ineffective assistance of counsel.

Thomas' original sentencing hearing was scheduled for February 17, 1981. His attorney, McCoy, did not appear at the hearing. McCoy believed Thomas had fired him as his attorney and informed the court that he would not be present at the scheduled hearing. The court continued the hearing until February 25 and ordered McCoy to appear because Thomas denied that he fired McCoy. McCoy did appear to represent Thomas at the February 25 hearing, and Thomas was sentenced at that time after statements by McCoy on behalf of Thomas. Thomas' claim that McCoy failed to appear at his sentencing is totally without merit.

McCoy also did not appear at the hearing on the motion to consolidate the trials of Thomas and his two brothers. Even if we assume that McCoy's failure to appear at the hearing was not a reasonable practice among trial attorneys in the area, Thomas has again failed to show how McCoy's failure to represent him at the hearing prejudiced him. Despite the fact that the hearing on the motion to consolidate may have been a critical stage of the prosecution, Thomas must still show that his failure to be represented at the hearing affected the outcome of his trial. The mere fact that he was unrepresented at a critical stage is not sufficient to satisfy the ineffective assistance of counsel test under *Strickland, supra*.

McCoy testified that it was his desire that the trials of the three brothers be consolidated so there would be another party to blame for the assault. He stated that Gary Thomas was more blameworthy because he attacked Rave with a board, while Ralph Thomas just used his fists. There is no evidence in the record that counsel for Thomas' two brothers tried to lay the majority of the blame on Ralph Thomas during the trial. Rather, Gary Thomas testified in defense of Ralph Thomas while on the stand. Thomas has not stated at any time that he objected to being tried with his two brothers or that the consolidated trial hurt his defense in any way. Thomas has not met the burden placed on him under *Strickland*. The trial court did not err in failing to find that Thomas' counsel was ineffective by not appearing at the hearing.

Thomas has also not shown that McCoy's failure to appear at the State's depositions prejudiced him. Again, assuming that the failure to appear at depositions of the opposing party's witnesses is not a reasonable practice among criminal trial attorneys, we find that Thomas has not offered any evidence to show that McCoy's failure to attend affected the outcome of his trial. As discussed above, McCoy received copies of all the depositions. He also cross-examined all the witnesses called by the State at the trial. Counsel for Thomas' brothers did attend the depositions and cross-examined all the deponents. Certainly, Thomas' brothers had the same interest in being acquitted of any assault charges as Thomas and were thus motivated to expose any weaknesses in the State's case. The

brothers' counsel did not use any testimony at the depositions to impeach, rehabilitate, or bolster the testimony of any witness at trial. Thomas has failed to substantiate his contention that McCoy's counsel was ineffective. He has not shown that he was prejudiced by McCoy's failure to attend the depositions and has therefore not satisfied the second element of the *Strickland* test. The trial court did not err in disallowing Thomas' claim.

Thomas has failed to make any showing that his counsel during the prosecution for the first degree assault charge, Richard McCoy, was ineffective. The judgment of the district court is affirmed.

AFFIRMED.

HASTINGS, C.J., participating on briefs.