

FILED

Mar 26 2018, 9:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR AMICUS CURIAE
PUBLIC DEFENDER OF INDIANA

Stephen T. Owens
Public Defender of Indiana

J. Michael Sauer
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James E. Hinkle, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 26, 2018 <br><br> Court of Appeals Case No. <br> 20A03-1703-PC-690 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Teresa L. Cataldo, Judge <br><br> Trial Court Cause No. <br> 20D03-0812-FB-61 <br> 20D03-1312-PC-81 |

**Najam, Judge.**

# Statement of the Case

Employing the *Davis-Hatton* procedure,[1] James E. Hinkle appeals his convictions for child molesting, as a Class A felony, and sexual misconduct with a minor, as a Class D felony; his adjudication for being a repeat sexual offender; and the post-conviction court's denial of his petition for post-conviction relief. Hinkle raises the following four issues[2] for our review:

> 1. Whether the trial court abused its discretion when it excluded evidence of the victim's prior drug use.
>
> 2. Whether the post-conviction court abused its discretion when it prohibited Hinkle from obtaining, in the course of discovery on his post-conviction claim of ineffective assistance of trial counsel, all documents, records, and videos that his trial counsel had access to in preparing for Hinkle's trial.
>
> 3. Whether Hinkle's trial counsel rendered ineffective assistance.
>
> 4. Whether the post-conviction court's judgment is consistent with the requirement that such judgments be supported by findings of fact and conclusions of law.

---

[1] The *Davis-Hatton* procedure results in the termination or suspension of an already initiated direct appeal to allow the appellant to pursue a petition for post-conviction relief. *See, e.g.*, *White v. State*, 25 N.E.3d 107, 121 (Ind. Ct. App. 2014), *trans. denied*. Where, as here, the petition for post-conviction relief is denied, the direct appeal may be reinstated. *Id.* This procedure permits an appellant to simultaneously raise his direct-appeal issues as well as issues on appeal from the denial of his petition for post-conviction relief. *Id.* "In other words, the direct appeal and the appeal of the denial of post-conviction relief are consolidated." *Id.*

[2] The Public Defender of Indiana has filed a brief of *amicus curiae* in support of Hinkle on the second issue.

We affirm.

## Facts and Procedural History

In the summer of 2004, S.B., who lived in Michigan with his mother, visited family in Elkhart County, Indiana. At the time, S.B. was thirteen years old. While S.B. was in Elkhart County for a few weeks, his mother returned to Michigan.

Hinkle is part of S.B.'s extended family in Elkhart County, and S.B. spent some of the nights he was in Elkhart County at Hinkle's residence. On at least one occasion while S.B. was with Hinkle at Hinkle's residence, Hinkle isolated S.B. and performed oral sex on S.B. Hinkle then had S.B. manually stimulate him.

In the summer of 2005, when S.B. was fourteen years old, he again spent some time over the summer at Hinkle's residence. On at least one occasion during that time, Hinkle again isolated S.B. and performed oral sex on him. And Hinkle again had S.B. manually stimulate him.

Over the next few years, S.B. began using illegal drugs. In the summer of 2008, when S.B. was seventeen years old, he used opiates and marijuana on a nearly daily basis. He was also experimenting with other drugs, and he had tried heroin a handful of times. His mother became concerned about changes in S.B.'s behavior, and when he again stayed with his family in Elkhart County that summer, his grandmother suspected drug use. S.B.'s family eventually discovered that S.B. had been using drugs and confronted him. During their

discussion, S.B. admitted to his drug use and also revealed that Hinkle had been molesting him.

[7] S.B.'s family reported Hinkle's molestations to local police. On August 13, 2008, S.B. participated in a video-recorded interview at the Child and Family Advocacy Center ("CFAC"). That interview was conducted by a CFAC employee and attended by Elkhart City Police Department Detective Carlton Conway as well as a representative of the Indiana Department of Child Services. A few days after that interview, Detective Conway conducted his own interview with S.B., and he separately interviewed P.B. and S.M., S.B.'s grandmother and uncle, respectively. Those interviews were also video-recorded. Susan Snyder, the deputy prosecuting attorney, conducted a third, unrecorded interview of S.B. in November.

[8] In December, the State charged Hinkle with two counts of incest, each as a Class B felony; two counts of sexual misconduct with a minor, each as a Class D felony; and for being a repeat sexual offender. Marielena Duerring entered her appearance as Hinkle's trial counsel. In January of 2009, Snyder wrote Duerring a letter in which Snyder invited Duerring to view S.B.'s two video-recorded interviews from August of 2008 along with police reports that summarized the State's investigation. Snyder further informed Duerring that Snyder had "an open file policy meaning you may schedule a time to view my

entire un-redacted file." Ex. Vol. III at 121.[3] However, to view the recordings or documents held by Snyder, Duerring was required to execute a "Discovery Compliance Agreement" in which Duerring "agreed that any privileged information would not be disclosed by counsel to anyone," which apparently included Hinkle.[4] Appellant's App. Vol. IV at 58.

[9] After numerous continuances, the court held Hinkle's jury trial in August of 2013. The morning of trial, the State moved to amend the charging information such that the State charged Hinkle with child molesting, as a Class A felony; sexual misconduct with a minor, as a Class D felony; and for being a repeat sexual offender. Duerring, who had had discussions with the State about amending the charging information for the preceding three months and had prepared for the new Class A felony allegation, did not object in order to avoid having Hinkle subjected to a new cause on the Class A felony.

---

[3] Our pagination of the exhibits refers to the .pdf pagination.

[4] The parties repeatedly refer to the Discovery Compliance Agreement executed by Duerring, but that document is not in the record on appeal. In 2013, Hinkle's post-conviction counsel executed an "Acknowledgement of State's Discovery Compliance," which states, among other things:

> the undersigned shall make no photocopies of the criminal offense report nor shall photocopies of the criminal offense report be made by any other person for any other purpose without the express written consent of the deputy prosecuting attorney, nor shall counsel for defendant permit the criminal offense report or the contents therein[] to be disclosed to any oth[e]r persons other than the defendant or agents of defendant's counsel. Further, while the undersigned shall be permitted to discuss the contents of the criminal offense report with the defendant, the undersigned shall not permit any defendant or any other person acting for or on behalf of the defendant to copy verbatim or substantially verbatim any parts of said criminal offense report . . . .

Appellant's App. Vol. IV at 3-4. The Brief of *Amicus Curiae* assumes that the Discovery Compliance Agreement executed by Duerring and the Acknowledgement of State's Discovery Compliance executed at least four years later by the post-conviction counsel are the same document. *See Amicus Curiae* Br. at 7.

[10]     During the ensuing trial, the State called S.B. as a witness, and he recounted Hinkle's molestations of him. On cross-examination, Duerring made an offer of proof outside the presence of the jury. During that offer, Duerring examined S.B. on his prior drug use on the theory that S.B. had made up Hinkle's molestations of him to avoid facing consequences from his family for his drug use. However, the trial court excluded S.B.'s drug use on the grounds that the court saw "no connection between this family meeting and the establishment of a motive to falsely accuse [Hinkle] of molestation." Tr. Vol. III at 187. The jury found Hinkle guilty on the child molesting counts, and he then admitted to being a repeat sexual offender. The trial court entered its judgment of conviction and sentence accordingly.

[11]     Thereafter, Hinkle filed a petition for post-conviction relief and alleged ineffective assistance of trial counsel. Richard Thonert, Hinkle's post-conviction counsel (and Hinkle's counsel in this appeal), requested that Duerring provide to him "the discovery . . . as it relates to this case," but Duerring stated that "she [wa]s unable to provide . . . the discovery without permission from" the Elkhart County Prosecutor's office. Appellant's App. Vol. IV at 71. And when Thonert requested the prosecutor's office grant that permission to Duerring or otherwise "provide . . . a complete copy of the discovery in this matter," a representative of the prosecutor declined. *Id.* at 28.

[12]     Accordingly, Thonert filed a motion to compel with the post-conviction court. In that motion, Thonert specified that he sought "all information upon which [the State] relied in bringing the charges against [Hinkle] in this cause, whether

or not such information was used during the trial, including the identity of any and all persons contacted, information received from such person whether in writing, audio or video recording, or otherwise documented, which was either disclosed or not disclosed to trial counsel as it relates to the investigation [or] preparation of filing of charges in this cause against [Hinkle]." *Id.* at 25. On November 18, 2014, the post-conviction court entered its order denying the motion to compel. In that order, the court stated as follows:

> 20. In the instant case, Petitioner requests that the court compel the State to produce any and all documents, reports, affidavits, memorandum, police reports, audio/videos, or other items otherwise designated as discovery material previously produced or not produced to trial counsel in the underlying criminal case. Petitioner also requests that the State be compelled to answer interrogatories identifying any discovery materials in its possession and control that were or were not produced to trial counsel as the same relates to the basis upon which the charges made against Petitioner were made.

> 21. Although the post conviction rules provide for discovery, a post conviction proceeding is not a normal civil action. A post conviction proceeding is a special quasi-civil remedy designed for the presentation of errors unknown or unavailable at the time of trial or direct appeal. *Sewell v. State*, 592 N.E.2d 705, 707 (Ind. Ct. App. 1992). Because post conviction proceedings take place after trial or a guilty plea hearing, the convicted individual typically has discovered particular items of State evidence or foregone the opportunity to do so. Discovery is not required under the Due Process Clause of the Constitution; therefore, a defendant may waive pre-trial discovery rights by failing to exercise them. *Id*[.] A second opportunity to discover the same evidence will typically be precluded. *Id.*

22.     The State has an affirmative duty to disclose evidence favorable to a criminal defendant.  Thus, . . . such evidence is discoverable . . . .

23.     The post conviction relief process is not, however, a device for investigating possible claims, but a means for vindicating actual claims and there is no post conviction right to fish through official files for belated grounds of attack on the judgment or to confirm mere speculation or hope that a basis for collateral relief may exist.  *Brown v. State*, 698 N.E.2d 1132, 1139 (Ind. 1998).  To the extent a petitioner does not contend that there is any specific information in official files that support his or her claims to post conviction relief, no rule of constitutional law or state procedure mandates unfettered access to those files in hopes of uncovering such information.  [*Id.*]  Any post conviction discovery order should be appropriately narrow and limited.  Only where a petitioner presents the post conviction court with good cause to order the [S]tate to supply the petitioner with discovery that is relevant to the petitioner's case and is not privileged does the court have discretionary authority to grant relief.  *Roche v. State*, 690 N.E.2d 1115, 1132 (Ind. 1997), *aff'd in part, vacated in part on other grounds*, *Roche v. Davis*, 291 F.3d 473[ ](7th Cir[. 2]002).

24.     Further, where a timely work product objection has been made, a trial court's authority to control discovery does not extend to compelling production of verbatim copies of police reports because such reports are the work product of the prosecuting attorney, having been prepared for the prosecuting attorney by the police officer as the prosecuting attorney's agent. *Gault v. State*, 878 N.E.2d 1260, 1266 (Ind. 2008) (citing *State ex rel. Keaton v. Circuit Court of Rush County*, 475 N.E.2d 1146, 1148 (Ind. 1985)[)].

25.     In the instant case, the record establishes that . . . the court directed the State to produce for Petitioner all exculpatory

evidence in its possession and control. Additionally, the record reveals that the State disclosed discoverable materials to trial counsel in accordance with discovery procedures, including the execution of a Discovery Compliance Agreement whereby it was agreed that any privileged information would not be disclosed by counsel to anyone. . . . Moreover, a thorough review of Petitioner's MOTION reveals that Petitioner's discovery request is over broad in that Petitioner seeks "any and all" information in order to determine whether trial counsel may have been ineffective. This request is clearly a prohibited "fishing expedition" to determine if a claim for post conviction relief may exist rather than a request for specific information to support an actual claim for post conviction relief. Unfettered access of this kind is not authorized.

*Id.* at 56-59 (citations to the record omitted). Despite that order, on two subsequent occasions Thonert attempted to issue subpoenas *duces tecum* to the State for the same information he had attempted to obtain by way of his motion to compel, but the post-conviction court prohibited those subpoenas.

[13] Following the post-conviction court's denial of the motion to compel, Thonert deposed Snyder and Duerring. In her deposition, Snyder testified that she had informed Duerring of Snyder's "open file" policy and that Snyder's notes stated that she had "notif[ied her] staff [Duerring] was coming . . . to . . . look" at the evidence in the State's possession and "to let her do it." Appellant's App. Vol. V at 34-36. Similarly, when asked whether she had taken advantage of Snyder's open-file policy, Duerring testified, "I believe so," and stated that, while she had no independent recollection of having reviewed the State's recordings and records as they related to Hinkle, it was her "general policy . . . to go over [to

the prosecutor's office] and review anything" that was available. *Id.* at 67, 95. Duerring specifically testified that she "believe[d she] viewed the videos, yes," when asked, and she then described both the CFAC video and the video of the interview conducted by Detective Conway. *Id.* at 70.

[14] During her deposition, Duerring stated that "summaries" of the videos were "in the discovery" that she had in her possession. *Id.* at 71. She then gave her file and notes on Hinkle's case, which included police reports Duerring had obtained from Snyder, to Thonert. *Id.* at 55. Duerring described the documents she gave to Thonert during her deposition as "the extent of the discovery that was sent to me" by Snyder. *Id.* at 58. There was no discussion of the Discovery Compliance Agreement when Duerring handed over her file to Thonert.

[15] In May and June of 2016, the post-conviction court held an evidentiary hearing on Hinkle's petition for post-conviction relief. Following that hearing, the court entered findings of facts and conclusions of law and denied Hinkle's petition. This appeal ensued.

## Discussion and Decision

### Issue One: Whether the Trial Court Abused its Discretion in the Admission of Evidence

[16] The first issue in this *Davis-Hatton* appeal is whether, on direct appeal, the trial court abused its discretion when it prohibited Hinkle from having S.B.'s drug use admitted into evidence. The trial court has "inherent discretionary power on the admission of evidence, and its decisions are reviewed only for an abuse

of that discretion." *McManus v. State*, 814 N.E.2d 253, 264 (Ind. 2004) (internal quotation marks omitted). An abuse of discretion occurs when the trial court's judgment "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014).

[17] Hinkle asserts that S.B.'s drug use was relevant to Hinkle's theory that S.B. had fabricated the molestation allegations in order to avoid facing consequences from his family for his drug use. In particular, Hinkle contends that he made his offer of proof under Indiana Evidence Rule 616, which permits "[e]vidence that a witness has a bias, prejudice, or interest for or against any party" when that evidence is "used to attack the credibility of the witness." In denying Hinkle's proffered evidence, the trial court concluded that Hinkle had not demonstrated a connection between S.B.'s family discussion on his drug use and a motive for S.B. to falsely accuse Hinkle of molestation.

[18] In his brief, Hinkle principally relies on this Court's recent opinion in *Hyser v. State*, 996 N.E.2d 443 (Ind. Ct. App. 2013). In *Hyser*, we stated:

> Hyser attempted to present a defense that the allegations and testimony against him were fabricated as a retaliatory act in response to the report [Hyser] made to DCS that he believed J.M. was being abused by Marner. Hyser wished to elicit testimony from Collins, as presented in his offer to prove, which demonstrated that the allegations against Hyser were first raised a short time after Collins threatened to report Marner. Hyser also wished to elicit testimony from Key that he witnessed Marner strike J.M., and from Detective Osterday that the report to DCS on December 27, 2011, was made by Hyser and that the

report prompted J.M.'s allegations that Hyser had molested him. In addition, Hyser wished to present evidence to the jury that Marner was a registered sex offender in support of his defense that the allegations against him were fabricated.

The testimony which Hyser wished to elicit from Collins, Key, and Detective Osterday and the evidence that Marner was a registered sex offender was relevant as the evidence had, at a minimum, the tendency to show that the molestation allegations against Hyser were untrue and were made, or caused to be made by J.M. through the influence of Marner, in retaliation or in response to Hyser's action of making a child abuse report regarding Marner. *See Smith v. State*, 982 N.E.2d 393, 402 (Ind. Ct. App. 2013) ("In order to be relevant, the evidence at issue need only have some tendency, however slight, to make the existence of a material fact more or less probable, or tend to shed any light upon the guilt or innocence of the accused.") (citation and internal quotation marks omitted), *trans. denied*. In addition, we note that the testimony Hyser wished to elicit regarding his report to DCS was not inadmissible hearsay because Hyser did not wish to present it to prove the truth of the matter asserted, but instead to demonstrate that he had made the report against Marner a few days prior to the time he was first accused of the molestations, and the report provided a motive for Marner to retaliate against him by fabricating the molestation allegations and influencing J.M. to testify against Hyser. *See Dyson v. State*, 692 N.E.2d 1374, 1376 (Ind. Ct. App. 1998) (holding that the trial court erred in excluding certain testimony as hearsay because the defendant introduced the testimony not to prove the fact of the matter asserted but to demonstrate that the victim was biased and prejudiced against him) (citing *Shanholt v. State*, 448 N.E.2d 308, 316 (Ind. Ct. App. 1983) ("A witness's bias, prejudice or ulterior motives are always relevant at trial in that they may discredit her or affect the weight of her testimony.")). . . .

*Id.* at 448-49 (emphasis added). According to Hinkle, the facts in *Hyser* are comparable to those here because, by showing that S.B. had used drugs and was being confronted by his family about his drug use at the time S.B. revealed Hinkle's molestations, Hinkle sought to demonstrate that S.B.'s ulterior motive for accusing Hinkle of the molestations was S.B.'s desire to avoid facing consequences from his family for his use of drugs.

[19] But we cannot say that the trial court abused its discretion on this issue. In *Hyser*, the defendant established a foundation for his theory that the witnesses against him may have acted in retaliation. Here, unlike in *Hyser*, there is no question of retaliation and Hinkle did not present any basis, other than speculation, to support his assumption that S.B. had invented the allegations of molestation against Hinkle. Rather, as the State correctly observes, Hinkle's theory that S.B. falsely accused Hinkle to avoid facing consequences for his own drug use "is factually misplaced. S.B. testified that he . . . did not know" his family was considering consequences for his behavior, and, instead, he thought "[i]t was just an open . . . discussion" with his family about his use of drugs. Appellee's Br. at 24 (citing Tr. Vol. III at 181). As such, we cannot say that the trial court abused its discretion when it excluded evidence of S.B.'s drug use.

### *Issue Two: Post-Conviction Discovery*

[20] Hinkle next asserts that the post-conviction court abused its discretion when it limited Hinkle's ability to discover potential acts of ineffective assistance of trial counsel. The Public Defender of Indiana joins Hinkle on this issue in its Brief

of *Amicus Curiae*. Our trial and post-conviction courts are vested with "broad discretion" in ruling on discovery issues, and we will reverse only upon a showing of an abuse of that discretion. *Mut. Sec. Life Ins. Co. v. Fid. & Deposit Co.*, 659 N.E.2d 1096, 1103 (Ind. Ct. App. 1995), *trans. denied*. "Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal," and "[d]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Id.*

[21] According to Hinkle, the post-conviction process entitles him to the same access to the State's records that the State had made available to his trial counsel prior to trial. Hinkle asserts that merely alleging a *Brady* violation or ineffective assistance of counsel in his petition for post-conviction relief is sufficient to require this equality of access.

[22] The Indiana Supreme Court disagrees and has squarely rejected the same argument that Hinkle and the *amicus* now present to this Court. As our Supreme Court has explained:

> Roche's claim is similar to that recently considered by the New Jersey Supreme Court in an analogous proceeding. *State v. Marshall*, 148 N.J. 89, 690 A.2d 1 (1997), *cert. denied*, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997). . . . On appeal from the denial of post-conviction relief, Marshall contended (as Roche does here) that the post-conviction court's decision not to order the State to allow him to inspect the State's entire file "denied him his right to a full and fair PCR hearing." *Id.*, 690 A.2d at 91.

The New Jersey high court . . . proceeded to enunciate the following principles concerning discovery in post-conviction proceedings:

> We anticipate that only in the unusual case will a PCR court invoke its inherent right to compel discovery. In most cases, a post-conviction petitioner will be fully informed of the documentary source of the errors that he brings to the PCR court's attention. Moreover, we note that PCR "is not a device for investigating possible claims, but a means for vindicating actual claims." *People v. Gonzalez*, 51 Cal. 3d 1179, 275 Cal. Rptr. 729, 776, 800 P.2d 1159, 1206 (1990), *cert. denied*, 502 U.S. 835, 112 S. Ct. 117, 116 L. Ed. 2d 85 (1991). The filing of a petition for PCR is not a license to obtain unlimited information from the State, but a means through which a defendant may demonstrate to a reviewing court that he was convicted or sentenced in violation of his rights.

> Moreover, consistent with our prior discovery jurisprudence, any PCR discovery order should be appropriately narrow and limited. "[T]here is no postconviction right to 'fish' through official files for belated grounds of attack on the judgment, or to confirm mere speculation or hope that a basis for collateral relief may exist." *Gonzalez*, *supra*, 275 Cal. Rptr. at 775, 800 P.2d at 1205; *see Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir.), *cert. denied*, 512 U.S. 1230, 114 S. Ct. 2730, 129 L. Ed. 2d 853 (1994); *State v. Thomas*, 236 Neb. 553, 462 N.W.2d 862, 867-68 (1990). However, where a defendant presents the PCR court with good cause to order the State to supply the defendant with discovery that is relevant to the defendant's case and not privileged,

the court has discretionary authority to grant relief. *See* Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C.A. § 2254 Rule 6(a); [*State v.*] *Lewis*, [ ] 656 So. 2d [1248,] 1250; [*People ex rel. Daley v.*] *Fitzgerald*, [123 Ill. 2d 175, 183] 121 Ill. Dec. [937,] 941, 526 N.E.2d [131,] 135 [(1988)] (noting that "good cause" standard guards against potential abuse of PCR discovery process).

*Marshall*, 690 A.2d at 91-92 (citations to New Jersey authority omitted) [(alterations original to *Roche*)].

Roche contends that the post-conviction court abused its discretion because his inability to have full access to the State's files "improperly" denied him the opportunity to litigate fully (i) claims arising under *Brady v. Maryland* and (ii) claims regarding ineffective assistance of counsel. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and its progeny (notably *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985), and *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)), impose an affirmative duty on the prosecution to disclose to a criminal defendant known favorable evidence that rises to a material level of importance. Roche does not claim a *Brady* violation. Rather, he argues that had he been provided all of the prosecutor's files from his trial and all of the prosecutor's files on each of his co-defendants and all of the prosecutor's files on each of the key witnesses in his and their cases, he might have found a *Brady* violation that he could have litigated in his post-conviction proceeding. But, as the New Jersey court pointed out in *Marshall*, discussed *supra*, no rule of constitutional law or state procedure mandates unfettered access to the prosecution's files in the hopes that a violation of the prosecutor's duty under *Brady* will be uncovered. *See Kyles*, 514 U.S. at 437, 115 S. Ct. at 1567 ("We have never held that the Constitution demands an open file policy (however such a policy

might work out in practice), and the rule in *Bagley* (and hence in *Brady*) requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate").

Our analysis of Roche's ineffective assistance of counsel argument is essentially the same. He does not contend that there is any specific information in the State's files that supports his claims of ineffective assistance of counsel, only that if he had been able to examine the files he sought, he might have found instances of ineffective assistance of counsel that he could have litigated in his post-conviction proceeding. This appears to us to be no more than an assertion of a post-conviction right to investigate possible claims, not vindicate actual claims. *See Marshall*, 690 A.2d at 91 (citing *Gonzalez*, 275 Cal. Rptr. at 776, 800 P.2d at 1206). The post-conviction court acted within its discretion in denying the motion to compel this discovery.

*Roche v. State*, 690 N.E.2d 1115, 1132-33 (Ind. 1997).[5]

[23]  Contrary to the argument of the *amicus*,[6] we conclude that Hinkle's argument on appeal is identical to the argument considered and rejected by our Supreme Court in *Roche*. That is, Hinkle "does not contend that there is any specific information in the State's files that supports his claims of ineffective assistance of counsel," or his claims under *Brady*. *Id.* at 1133. Rather, he claims "only that if he had been able to examine the files he sought, he might have found instances" of error "that he could have litigated in his post-conviction

---

[5]  We note that the State does not materially rely on *Roche* in its brief on appeal.

[6]  Hinkle does not cite *Roche*, let alone distinguish it, in his brief on appeal.

proceeding." *Id.* As such, Hinkle's discovery requests in the post-conviction process were improper fishing expeditions, not attempts to vindicate actual claims. *Id.* at 1132 (quoting *Marshall*, 690 A.2d at 91-92).

[24] That said, we are not unsympathetic with the position of Hinkle and the *amicus* on this issue. The dichotomy adopted by the Indiana Supreme Court in *Roche* between "investigating possible claims" and "vindicating actual claims" does not fully take into account the fact that post-conviction counsel needs to walk in the shoes of trial counsel to determine whether trial counsel's decisions *created* actual claims that deserve vindicating. This often requires an investigation into territory outside the trial record. As the Supreme Court of the United States has put it, "[a] fair assessment of attorney performance requires that every effort be made to . . . reconstruct the circumstances of counsel's challenged conduct[] and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Indeed, "[i]n *any* case presenting an ineffectiveness claim, the performance inquiry *must be whether counsel's assistance was reasonable considering all the circumstances*." *Id.* at 688 (emphases added). After all, "the purpose of the effective assistance guarantee of the Sixth Amendment . . . is simply to ensure that criminal defendants receive a fair trial." *Id.* To prohibit an investigation into possible claims, which after an investigation turn out to be actual claims, does not meet those Sixth Amendment standards.

[25] Nonetheless, we are in no position to reconsider the opinions of the Indiana Supreme Court. *Horn v. Hendrickson*, 824 N.E.2d 690, 694 (Ind. Ct. App. 2005).

Following *Roche*, as we must, we conclude that the post-conviction court did not abuse its discretion when it denied Hinkle's motion to compel.[7]

### Issue Three: Hinkle's Claims of Ineffective Assistance

[26] We thus turn to Hinkle's numerous claims of ineffective assistance of trial counsel. Our standard of review in such appeals is clear:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014). "When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* at 274. In order to prevail on an appeal from the denial of post-conviction relief, a petitioner must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Humphrey v. State*, 73 N.E.3d 677, 681-82 (Ind. 2017). Further:

---

[7] We note that Hinkle does not address in his brief on appeal the post-conviction court's alternative bases for denying his motion to compel, namely, that his discovery request was overbroad and that the work-product privilege applied to at least some of the records Hinkle sought. Neither does Hinkle address whether Duerring's production of her file to Thonert during her post-conviction deposition, which included discovery given to Duerring by Snyder, related to Hinkle's discovery requests in his motion to compel.

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 682.

[27] Here, Hinkle contends that Duerring rendered ineffective assistance for each of the following reasons: (1) she did not object to the State's day-of-trial amendment to the charging information; (2) she did not call witnesses who would have called S.B.'s credibility into doubt; (3) she did not object to S.B.'s testimony at trial of uncharged acts of molestation Hinkle had allegedly committed; (4) she did not present an objection under Criminal Rule 4 for a denial of Hinkle's speedy-trial rights; (5) she failed to properly investigate

Hinkle's case; and (6) she failed to request a jury instruction on unanimity.[8] We address each argument in turn.

*Amendment to the Charging Information*

[28] First, Hinkle asserts that Duerring rendered ineffective assistance when she failed to object to the State's amendment of the charging information the day of his trial. But we conclude that Hinkle cannot demonstrate that Duerring's performance on this issue fell below an objective standard of reasonableness. *See id.* Duerring testified that she had known of the State's anticipated amendment for three months before it happened; that she had prepared a defense for it; and that she had strategically declined to object to avoid having the State simply charge the Class A felony allegation under a new cause number. Duerring's failure to object to the State's amendment of the charging information was not ineffective assistance of counsel.

*Other Witnesses*

[29] Second, Hinkle asserts that he had provided Duerring with a list of potential witnesses who would have testified that Hinkle was never alone with S.B., contrary to S.B.'s allegations. However, Hinkle does not support his assertions with cogent reasoning, and he does not direct this Court to parts of the record on appeal that might support his assertion aside from a general citation to a

---

[8] Hinkle's assertion that the purported error in the jury instructions is fundamental error is not available to him. *See Lindsey v. State*, 888 N.E.2d 319, 325 (Ind. Ct. App. 2008), *trans. denied*.

thirty-four page block of one volume of the transcript. *See* Appellant's Br. at 43. As such, he has not carried his burden to show error on this issue. *See* Ind. Appellate Rule 46(A)(8)(a). His failure notwithstanding, insofar as Hinkle's argument is that Duerring should have called his children as witnesses, Duerring testified that she did not do so because one child was too young to have a specific recollection of any relevant events and another child displayed evidence of having been "coach[ed] . . . to say something contrary to what had happened," and Duerring felt that calling that child as a witness would not be "prudent." Tr. Vol. VI at 130-31. We cannot say that the post-conviction court erred when it rejected Hinkle's claim on this issue.

### Uncharged Acts

[30] Third, Hinkle asserts that Duerring rendered ineffective assistance when she did not object to S.B.'s testimony of uncharged acts of molestation. But while Duerring did not object, the trial court did interrupt S.B.'s testimony and admonished Snyder to "confine your evidence" to the acts charged and informed her that she "may not put in evidence of multiple acts over a period of time." Tr. Vol. III at 143-44. As such, Hinkle's real issue here is that Duerring did not additionally seek an admonishment to the jury. But Duerring testified that she did not seek such an admonishment because she did not want to draw the jury's attention to the uncharged acts. Tr. Vol. VI at 62. As such, we cannot say that the post-conviction court erred when it rejected Hinkle's claim on this issue.

[31]   Fourth, Hinkle asserts that Duerring rendered ineffective assistance when she did not seek Hinkle's discharge under Indiana Criminal Rule 4(C), which directs that no person shall be subject to a criminal prosecution more than one year after the charges are filed unless such delay is attributable to the defendant or court congestion.  Here, the State filed its original charges against Hinkle on December 31, 2008, and the court held his jury trial in August of 2013. However, despite Hinkle's bald assertions on appeal, each continuance between those two occurrences was attributable either to Hinkle or to court congestion. And Hinkle does not suggest on appeal that Duerring's requests for or acquiescence in those continuances were deficient performance.[9]  As such, Hinkle has not demonstrated ineffective assistance of counsel under Criminal Rule 4(C).[10]

*Duerring's Investigation*

[32]   Fifth, Hinkle asserts that Duerring rendered ineffective assistance of counsel when she allegedly did not sufficiently investigate his case.  Hinkle's argument on this issue seems to suggest that, because Duerring testified during the post-

---

[9] Hinkle seems to suggest that the court's April 8, 2013, finding of congestion was erroneous because the case that prevailed over his was not ultimately tried on that date.  But Hinkle does not demonstrate on appeal that the trial court should have known at the time it vacated Hinkle's trial date due to congestion that the other case would be delayed.

[10] Although the State diligently addresses whether Hinkle was denied his constitutional right to a speedy trial, we conclude that Hinkle has not supported any such argument with cogent reasoning, and therefore we do not consider it. *See* App. R. 46(A)(8)(a).

conviction proceedings that she did not specifically recall various aspects of her investigation, she must not have investigated. However, Duerring did not testify that she did not investigate Hinkle's case; she testified that she did do so, but she simply could not specifically recall various aspects of having done so. Hinkle has not carried his burden on this issue.

[33]     The State interprets Hinkle's argument to be that Duerring should have insisted on going to trial in June of 2013, before the State learned that Hinkle was not biologically related to S.B. and, as such, when Hinkle had a complete defense to the incest allegations.[11] But, as the State points out, Duerring testified that, prior to June of 2013, she knew that the State had discovered the lack of a biological relationship between Hinkle and S.B. and that the State had already intended to amend the information accordingly. As such, Hinkle has not demonstrated any error with respect to Duerring's performance on this issue.

*Jury Instruction*

[34]     Sixth, and last, Hinkle asserts that Duerring rendered ineffective assistance of counsel when she did not object to the lack of a jury instruction on unanimity. In support of this argument, Hinkle relies on *Baker v. State*, 948 N.E.2d 1169 (Ind. 2011). But while our Supreme Court in *Baker* discusses jury instructions on unanimity, the Court also held that, even if there is an error in the giving of

---

[11]  Insofar as Hinkle asserts that Duerring rendered ineffective assistance by not seeking another continuance in August of 2013 to do further investigation, we agree with the State that this claim is based on "mere speculation." Appellee's Br. at 40.

such an instruction, such errors are harmless where "the only issue was the credibility of the alleged victims." *Id.* at 1179. As our Supreme Court stated: "Ultimately the jury resolved the basic credibility dispute against [the defendant] and would have convicted [him] of *any* of the various offenses shown by the evidence to have been committed." *Id.* (quotation marks omitted; emphasis in original). Here, assuming without deciding that a unanimity instruction would have been included at Hinkle's request, the lack of such an instruction is harmless error because the only issue at trial was S.B.'s credibility. Accordingly, Hinkle cannot show that, had Duerring requested such an instruction, the result of his trial would have been different.

### Issue Four: Post-Conviction Rule 1(6)

[35] Finally, Hinkle asserts that the post-conviction court failed to enter findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6). But we agree with the State that this lengthy portion of Hinkle's brief on appeal is simply a "repetition of his own claims," which we have already rejected above, and "does not show clear error; they simply explain that Hinkle is displeased with the lower court's ultimate conclusion." Appellee's Br. at 56.

[36] Moreover, we note that, under P-C Rule 1(6):

> The [post-conviction] court is required to make findings of fact which are sufficient to enable this Court to dispose of the issues upon appeal. However, the post-conviction judge is not required to recite the evidence but only the substantive facts which compel the conclusions reached. These findings must communicate the basis upon which the petition is granted or denied.

*Shackelford v. State*, 486 N.E.2d 1014, 1018 (Ind. 1986). The post-conviction court's order denying Hinkle's petition for relief meets that burden. As such, Hinkle has not demonstrated any error on this issue.

### *Conclusion*

[37] In sum, we affirm Hinkle's convictions, and we affirm the post-conviction court's denial of his petition for post-conviction relief.

[38] Affirmed.

Baker, J., and Mathias, J., concur.