## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Cynthia P. Helfrich
Helfrich & Harrell, LLC
Avon, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ryan P. Ballard,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 30, 2018

Court of Appeals Case No.
32A01-1704-PC-762

Appeal from the Hendricks
Superior Court

The Honorable Robert W. Freese,
Judge

Trial Court Cause Nos.
32D01-1606-PC-5
32D01-1208-FA-18

**Pyle, Judge.**

# Statement of the Case

[1]     After being convicted of two counts of Class A felony child molesting[1] and two counts of Class C felony child molesting,[2] Ryan P. Ballard ("Ballard"), filed a motion to correct error, raising a claim of newly discovered evidence. The trial court held a hearing and denied his motion. Ballard then started a direct appeal but suspended it, pursuant to the *Davis/Hatton* procedure,[3] and filed a petition for post-conviction relief. In his post-conviction petition, he raised a claim of ineffective assistance of trial counsel and reprised his newly discovered evidence argument. The post-conviction court denied post-conviction relief, finding that trial counsel's performance was not deficient and pointing out that Ballard had already raised and had had a determination on his newly discovered evidence claim.

[2]     Ballard now raises one direct appeal issue and one post-conviction appeal issue. Specifically, he argues that: (1) the trial court erred by denying his motion to

---

[1] IND. CODE § 35-42-4-3(a).

[2] I.C. § 35-42-4-3(b).

[3] As our Court has explained:

> The *Davis-Hatton* procedure results in the termination or suspension of an already initiated direct appeal to allow the appellant to pursue a petition for post-conviction relief. Where, as here, the petition for post-conviction relief is denied, the direct appeal may be reinstated. This procedure permits an appellant to simultaneously raise his direct-appeal issues as well as issues on appeal from the denial of his petition for post-conviction relief. In other words, the direct appeal and the appeal of the denial of post-conviction relief are consolidated.

*Hinkle v. State*, 97 N.E.3d 654, 658 n.1(Ind. Ct. App. 2018) (internal citations and quotation marks omitted).

correct error regarding newly discovered evidence; and (2) the post-conviction court erred by denying his petition for post-conviction relief on his ineffective assistance of trial counsel claim. Concluding that Ballard has failed to meet his burden of showing that: (1) the trial court abused its discretion by denying his motion to correct error; and (2) the post-conviction court erred by denying post-conviction relief, we affirm the challenged judgments.

We affirm.

## Issues

1. Whether the trial court abused its discretion by denying Ballard's motion to correct error regarding his claim of newly discovered evidence.

2. Whether the post-conviction court erred by denying post-conviction relief on Ballard's claim of ineffective assistance of trial counsel.

## Facts

In early August 2012, Ballard, who was then thirty-two years old, inappropriately touched his then eight-year-old daughter, T.B. ("T.B."). Specifically, Ballard licked and touched T.B.'s genitals, forced her to put her mouth on his penis, and licked her breasts. At that time, Ballard and T.B.'s mother ("T.B.'s mother) were married to other people, and T.B. lived with Ballard.

Several days later, on August 10, 2012, when T.B. was visiting her mother, the babysitter noticed that T.B. was masturbating. When questioned by the babysitter, T.B. told her that Ballard had taught her how to masturbate. T.B.,

who was crying and appeared scared, also disclosed that Ballard had molested her on several occasions. When T.B.'s mother returned from work, T.B. told her mother what Ballard had done, and T.B.'s mother called the police.

[6] The State charged Ballard with three counts of Class A felony child molesting and three counts of Class C felony child molesting. The trial court held three jury trials, and attorney Ralph Staples ("Attorney Staples") represented Ballard at all three trials. The first jury trial, held in August 2014, ended in a mistrial based on the delayed disclosure of evidence. The second trial was held in December 2014. When testifying on his own behalf, Ballard denied that he had molested T.B. and suggested that she had been coached to say that he had molested her. The second trial ended in a mistrial after the jury was unable to render a unanimous verdict.

[7] The third jury trial was held on June 22-24, 2015. At that time, there were five counts pending against Ballard: three counts of Class A felony child molesting and two counts of Class C felony child molesting.[4] At the time of this third trial, T.B. was eleven years old. She testified about how Ballard had molested her on various occasions and how he had made her masturbate. The State also called T.B.'s mother and babysitter as witnesses, both of whom testified about how and when T.B. disclosed that Ballard had molested her.

---

[4] The State had previously dismissed Count 4 prior to the first trial.

[8] Among the State's other witnesses were Dr. Jane Yip ("Dr. Yip"), who is a neuroscientist who did some testing with T.B., and Dr. Patricia Smallwood ("Dr. Smallwood"), who is a family therapist who never met with T.B. Dr. Yip testified about "brain mapping," which she described as a method of looking at the electrical activity produced by the activation of neurons in a person's brain and then comparing that brain activity to a "normative data base." (Trial Tr. Vol. 4 at 91, 92). She explained that the electrical activity was captured by using a "qualitative EEG" or "QEEG" that involved placing a cap with electrodes on a person's head and scalp. (Trial Tr. Vol. 4 at 91). Dr. Yip testified that she had performed the brain mapping or QEEG testing on T.B. in April 2015. She also testified that the testing showed, in part, that the speed of connectivity in the emotional center of T.B.'s brain was affected and that this result suggested that T.B. had "possible trauma, ongoing trauma." (Trial Tr. Vol. 4 at 94). Attorney Staples did not object to Dr. Yip's testimony, but he cross-examined Dr. Yip about her testing procedures and results. During cross-examination, Attorney Staples got Dr. Yip to admit that the affected brain activity that she saw in T.B.'s emotional center could have been attributed to other sources besides trauma. Additionally, Attorney Staples established that Dr. Yip did not know what had happened in T.B.'s life between the time of the alleged offenses in 2012 and the time that Dr. Yip tested T.B. in 2015.

[9] The State called Dr. Smallwood as an expert witness to testify about her general experience and training from when she worked as the director of victims' assistance for various law enforcement agencies. The State asked Dr.

Smallwood about the indicators that would show that a child had been coached, the likelihood that charges would be filed where coaching was suspected, the frequency of sexual abuse occurring as a one-time incident, and patterns for children's disclosure of abuse. The State also asked Dr. Smallwood whether a child victim of sexual abuse would experience trauma by having to testify in court. Attorney Staples repeatedly objected, based on relevancy, to the State's direct examination questions. Attorney Staples also cross-examined Dr. Smallwood to establish that she did not have firsthand knowledge of any of the allegations against Ballard.

[10] After the State rested, Ballard moved for directed verdict on the Class A felony in Count 3. The State agreed and moved to dismiss Count 3. Thereafter, Ballard presented his own witnesses and testified on his own behalf.[5] The jury found Ballard guilty of the four remaining charges.

[11] Almost two months after trial and just a few days prior to a scheduled sentencing hearing, Ballard filed a Trial Rule 59 motion to correct error. Ballard essentially asserted that he had newly discovered evidence. He declared that he had recently learned that T.B.'s mother had criminal charges filed against her and that a child in need of services ("CHINS") proceeding had been initiated against T.B.'s mother by the Department of Child Services ("DCS").

---

[5] The transcript contained in the record on appeal does not contain the transcription of the last day of the third jury trial, which would have included Ballard's testimony, closing arguments, and the jury's verdict. While the lack of a full transcript is not ideal, our review of the specific issues raised in this appeal is, nevertheless, still possible.

Ballard attached a copy of the DCS preliminary report, which indicated that T.B.'s mother had asked T.B. to lie to DCS about mother's drug use and that T.B. had initially done so because she was afraid. T.B. then admitted to DCS that she knew that her mother used drugs. Ballard suggested that this recently learned information could potentially "lead to the conclusion" that the State had unintentionally presented testimony that was "perjured" or "based on significant mistakes of fact[.]" (App. Vol. 2 at 45, 46) (italics removed). Ballard alleged that, based on this newly discovered evidence, the reliability of the jury's verdict could "reasonably be called into question[.]" (App. Vol. 2 at 46). Ballard's motion did not mention or address the nine factors necessary for obtaining a new trial based on a claim of newly discovered evidence.

[12] The State filed an objection to Ballard's motion to correct error, noting that the allegations about T.B.'s mother had occurred more than one month after Ballard's trial. Thus, the State argued that there was no connection or relevance between the allegations and Ballard's child molesting convictions. The trial court held a hearing on Ballard's motion to correct error and heard testimony during this hearing. [6] Thereafter, the trial court denied Ballard's motion to correct error.

[13] Subsequently, the trial court held a sentencing hearing and imposed a thirty-six (36) year sentence for each of Ballard's Class A felony convictions and a six (6)

---

[6] The transcript of the motion to correct error hearing is not in the record on appeal because Ballard did not request that it be transcribed when he filed his notice of appeal.

year sentence for each of his Class C felony convictions, and it ordered those sentences to be served concurrently in the Indiana Department of Correction. Ballard then filed his notice of appeal and commenced a direct appeal. While the appeal was pending, Ballard filed a *Davis/Hatton* petition, seeking to stay his appeal and to file a petition for post-conviction relief. Our Court granted his request to utilize the *Davis/Hatton* procedure.

[14] Thereafter, Ballard filed a post-conviction petition, raising claims of: (1) newly discovered evidence based on the same argument he had raised in his motion to correct error; and (2) ineffective assistance of trial counsel based on counsel's failure to object, based on improper vouching under Indiana Evidence Rule 704(b), to the testimony of Dr. Smallwood and Dr. Yip. In regard to Dr. Smallwood, Ballard acknowledged that his trial counsel had objected to Dr. Smallwood's testimony, but he stated that he was not aware as to the basis of counsel's objection because the sidebar conference discussing the objection had not been included in the trial transcript.

[15] In the State's response to Ballard's post-conviction petition, it argued that Ballard's post-conviction claim regarding newly discovered evidence should be barred by the doctrine of *res judicata* because it was the same argument previously set out in his motion to correct error and denied by the trial court. Alternatively, the State argued that Ballard was not entitled to relief on this claim because he could not demonstrate the required nine factors for obtaining a new trial based on newly discovered evidence. The State also argued that Ballard had not been denied the effective assistance of trial counsel.

[16] The post-conviction court held a hearing in January 2017. During the hearing, Ballard, who was represented by counsel, called several witnesses, including Attorney Staples, Dr. Smallwood, Dr. Yip, and the DCS case manager who was involved in T.B.'s CHINS case that occurred after Ballard's third trial.

[17] At the beginning of the hearing, Ballard argued that the newly discovered evidence was that, at the time of the third trial, the State was aware of but did not disclose the DCS investigation into T.B.'s mother's drug abuse and T.B.'s mother's request for T.B. to lie about that drug use. In regard to the ineffective assistance of trial counsel claim, Ballard told the post-conviction court that he was changing the basis of his claim from what was asserted in his post-conviction petition. Specifically, he stated that he wanted to argue that trial counsel had rendered ineffective assistance when he failed to object to the testimony of Dr. Smallwood and Dr. Yip based on Evidence Rule 702 (expert testimony) and not Rule 704 (vouching) as argued in his post-conviction petition.[7]

[18] When responding to Ballard's newly discovered evidence claim, the State pointed out that: (1) the evidence that Ballard had referenced occurred after the completion of the trial and was not known at the time of trial; and (2) Ballard had already made the same argument in his motion to correct error. As for the ineffective assistance of counsel claim, the State first objected to Ballard's

---

[7] Ballard conceded that, under the case law, there was no improper vouching or ineffective performance under Evidence Rule 704.

attempt to change the theory of his ineffective assistance of counsel claim to Evidence Rule 702; however, later, in a conference held off the record, the State indicated that it would withdraw its objection.

[19] When Ballard questioned Attorney Staples about why he did not object to Dr. Smallwood's and Dr. Yip's testimonies, Attorney Staples testified that it was part of his trial strategy. He explained that the theory of defense was that the State could not prove its case beyond a reasonable doubt, and he stated that his "position [was] that [Ballard's] case rose and sank on the testimony of [T.B.]." (Post-Conviction Tr. Vol. 2 at 39). Attorney Staples testified that the case boiled down to "he said, she said" and whether the jury would believe the testimony of T.B. or Ballard. (Post-Conviction Tr. Vol. 2 at 40). Additionally, Attorney Staples explained that his strategy for handling Dr. Smallwood's testimony was to cross-examine her to show that she had not been an eyewitness to the allegations and that his strategy for handling Dr. Yip's testimony was "to argue to the jury that [her brain mapping testing] was junk science." (Post-Conviction Tr. Vol. 2 at 38).

[20] Following the hearing, the post-conviction court issued an order denying Ballard's petition for post-conviction relief. In regard to Ballard's claim of newly discovered evidence, the post-conviction court noted that: (1) Ballard's new evidence (that T.B.'s mother was being investigated by DCS for her drug use and that T.B. had initially lied to a DCS worker about her mother's drug use) had occurred after the completion of his third trial; and (2) Ballard had already raised this claim in his motion to correct error, which had been denied

by the trial court. Nevertheless, the post-conviction court discussed the nine factors necessary for succeeding on a claim of newly discovered evidence and determined that Ballard had failed to show all nine required factors. Specifically, the post-conviction court found that Ballard had failed to demonstrate that the new evidence was: (1) material and relevant; (2) not merely impeaching; and (3) would probably have resulted in an acquittal in a retrial. In regard to Ballard's ineffective assistance of counsel claim, the post-conviction court found that Attorney Staples had "vigorously represented" Ballard during his three jury trials and determined that counsel's lack of objection to the testimony of the two doctors was trial strategy and did not equate to deficient performance. (App. Vol. 2 at 161). Ballard now appeals.

# Decision

[21] Ballard appeals: (1) the trial court's denial of his motion to correct error as a direct appeal issue; and (2) the post-conviction court's order denying post-conviction relief on his claim of ineffective assistance of trial counsel. We will address each argument in turn.

## 1. Direct Appeal Issue – Motion to Correct Error

[22] Ballard raises one direct appeal issue; specifically, he challenges the trial court's denial of his motion to correct error, which was based on the implication that he had newly discovered evidence. Although the State addressed Ballard's challenge to his claim of newly discovered evidence as a post-conviction issue, we note that Ballard is appealing his challenge to his claim of newly discovered

evidence as a direct appeal issue. Therefore, we will review the issue regarding the trial court's denial of his motion to correct error and apply the corresponding standard of review.[8]

[23] We review a trial court's ruling on a motion to correct error for an abuse of discretion. *State v. Gonzalez-Vasquez*, 984 N.E.2d 704, 706 (Ind. Ct. App. 2013), *trans. denied*. We will reverse a trial court's ruling on a motion to correct error "only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

[24] Newly discovered evidence requires a new trial only when the defendant demonstrates that: "(1) the evidence has been discovered since trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) it is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial." *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). Our Court "analyzes these nine factors with care, as the basis for newly discovered evidence should be received with

---

[8] Again, we note that Ballard did not request transcription of the hearing on his motion to correct error. Additionally, we note that Ballard filed his motion to correct error more than one month after the completion of his third trial and prior to his sentencing hearing. A motion to correct error is to be filed "within thirty (30) days of final judgment[,]" Ind. Trial Rule 59, or "within thirty (30) days after the date of sentencing." Ind. Crim. Rule 16(B). Thus, it appears that his motion was premature because the trial court had not yet entered a sentence or "final judgment." *See Hopkins v. State*, 420 N.E.2d 895, 896 (Ind. Ct. App. 1981) (explaining that, in a criminal case, a sentence is a final judgment). We will review his argument despite this procedural irregularity.

great caution and the alleged new evidence carefully scrutinized." *Taylor v. State*, 840 N.E.2d 324, 330 (Ind. 2006) (internal quotation marks and citations omitted). The defendant has the burden of showing that all nine requirements are met. *Id*.

[25] The crux of Ballard's argument is that he should get a new trial based on the evidence that: (1) DCS conducted an investigation into T.B.'s mother's drug use that led to the removal of T.B. from her house and drug charges against mother; and (2) the DCS investigation revealed that T.B.'s mother had asked T.B. to lie to DCS about mother's drug use. Ballard suggests that this evidence would be material and relevant because it could be used to "cross-examine or impeach" the testimony of T.B. and T.B.'s mother. (Ballard's Br. 14). He also suggests that the evidence could have been used to cross-examine Dr. Yip and that it could have affected the trial court's pre-trial ruling on the admission of T.B.'s statements.

[26] The record shows that the newly discovered evidence—the DCS investigation into T.B.'s mother's drug use and T.B.'s mother's request for T.B. to lie about her drug use—occurred at the end of July 2015, which was one month after the completion of Ballard's trial and more than three years after the crimes had occurred. Ballard cannot show that the new evidence was relevant or material to his child molesting charges or whether he molested T.B. three years prior. Additionally, as evident from his argument, he seeks to use the new evidence to merely impeach the credibility of witnesses, which does not support the granting of a new trial. *See Carter*, 738 N.E.2d at 671. Because Ballard has

failed to demonstrate all nine factors necessary for obtaining a new trial based on newly discovered evidence, the trial court did not abuse its discretion by denying his motion to correct error.

## 2. Post-Conviction Issue – Ineffective Assistance of Trial Counsel

[27]   As part of Ballard's appeal of the post-conviction court's order, he contends that the post-conviction court erred by denying him relief on his claim of ineffective assistance of trial counsel. Our standard of review in post-conviction proceedings is well settled.

> We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post-Conviction Rules. Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court. The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court.

*Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010) (internal case citations omitted), *trans. denied.* Additionally, "[w]e will not reweigh the evidence or judge the credibility of the witnesses; we examine only the probative evidence and reasonable inferences that support the decision of the

post-conviction court." *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind. 2007), *reh'g denied*, *cert. denied*.

[28] Ballard argues that his trial counsel had rendered ineffective assistance when he failed to object, based on Evidence Rule 702, to the testimony of Dr. Smallwood and Dr. Yip. A petitioner alleging a claim of ineffective assistance of counsel is required to show that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984), *reh'g denied*), *reh'g denied*, *cert. denied*. "A reasonable probability arises when there is a 'probability sufficient to undermine confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). "Failure to satisfy either of the two prongs will cause the claim to fail." *Gulzar v. State*, 971 N.E.2d 1258, 1261 (Ind. Ct. App. 2012) (citing *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002)), *trans. denied*.

[29] Before we address Ballard's argument, we note that the judge who presided over Ballard's jury trial is also the judge who presided over the post-conviction proceedings. "[I]n such a case, the judge is uniquely situated to assess whether trial counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's unprofessional conduct, there was a reasonable

probability that a different verdict would have been reached." *Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *reh'g denied, trans. denied.* Accordingly, the post-conviction court's findings and judgment are "entitled to 'greater than usual deference.'" *Id.* (quoting *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied*). *See also State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because the same judge presided at both the original trial and post-conviction hearing, the judge was in "an exceptional position" to assess weight and credibility of the factual evidence and whether the defendant was deprived of a fair trial).

[30] When reviewing a claim that counsel's performance was deficient, we consider the following:

> There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Counsel is afforded considerable discretion in choosing strategy and tactics, and these decisions are entitled to deferential review. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Stevens v. State*, 770 N.E.2d 739, 746-47 (Ind. 2002) (internal citations omitted), *reh'g denied, cert. denied.* "Few points of law are as clearly established as the principle that '[t]actical or strategic decisions will not support a claim of ineffective assistance.'" *McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (quoting *Sparks v. State*, 499 N.E.2d 738, 739 (Ind. 1986)), *reh'g denied.*

[31]     Here, the post-conviction court made the following findings regarding Ballard's claim alleging that trial counsel had rendered deficient performance by not raising an Evidence Rule 702 objection to the testimony of Drs. Smallwood and Yip:

> 4. It is not up to the Court to decide whether the testimony of Smallwood and Yip was a violation of the rules of evidence. Instead, it is up to this Court to determine whether [Attorney] Staples was ineffective in failing to object to their testimony. At the PCR hearing, [Ballard's] trial counsel (Staples) stated his theory that [Ballard's] case was a "he said-she said". His belief was that the testimony of Smallwood and Yip would be weak and unpersuasive, and that the jury['s] decision would turn on who they believed: [Ballard] or the victim. He described his decision to not object as trial strategy, and this Court so finds. The Indiana Supreme Court has held that "isolated omissions, errors, poor strategy, or bad tactics are not themselves evidence of deficient performance." *Brown v. State*, 691 N.E.2d 438, 446 (Ind. 1998).
>
> 5. Additionally deficient performance is defined as performance outside an objective standard of reasonableness. *Id.* [Attorney] Staples . . . vigorously represented [Ballard] during three jury trials. He filed numerous pleadings with the court on [Ballard's] behalf. He requested and argued for bond reduction, engaged in discovery including three depositions, cross-examined witnesses, and made numerous objections – some of which were sustained – throughout the trials. This Court finds that his performance was well within the objective standards of reasonableness we require and expect of defense counsels.

(App. Vol. 2 at 161).

[32] Here, the post-conviction court determined that Ballard had failed to show that counsel's representation fell below an objective standard of reasonableness where the evidence showed that Attorney Staples made a strategic decision regarding his handling of the testimony of the two doctors. On appeal, Ballard has failed to show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court. Accordingly, we affirm the post-conviction's judgment. *See McCary*, 761 N.E.2d at 392 (explaining that strategic decisions will not support a claim of ineffective assistance of counsel).

[33] Affirmed.

Kirsch, J., and Bailey, J., concur.